MITCHELL GARNET EVANS v. VONDA WILSON EVANS

No. COA99-355

(Filed 16 May 2000)

1. **Child Support, Custody, and Visitation— custody—change of circumstances—remarriage of parent—relocation of parent—best interests of child**

   Even though defendant mother planned to relocate with her child to live with her new husband in Maryland and the trial court found the proposed relocation would adversely affect the relationship between plaintiff father and his child, the trial court erred by modifying the parties' custody decree based on a change of circumstances because: (1) speculation or conjecture that a detrimental change may take place sometime in the future will

not support a change in custody; (2) remarriage, in and of itself, is not a sufficient change of circumstance affecting the welfare of the child to justify modification of the child custody order without a finding of fact indicating the effect of the remarriage on the child; (3) a change in the custodial parent's residence is not itself a substantial change in circumstances affecting the welfare of the child which justifies a modification of a custody decree; and (4) the trial court failed to address the issue of the best interests of the child.

**2. Child Custody, Support, and Visitation— custody—retention of jurisdiction**

The trial court erred in a child custody case by attempting to retain exclusive jurisdiction over future hearings because the legislature has not acted to grant authority to the trial court to retain jurisdiction in a domestic relations case.

Appeal by defendant from judgment entered 28 December 1998 by Judge John M. Britt in Nash County District Court. Heard in the Court of Appeals 21 February 2000.

*The Rosen Law Firm, by Lee S. Rosen, for plaintiff-appellee.*

*W. Michael Spivey, for defendant-appellant.*

EAGLES, Chief Judge.

This is an appeal from an order modifying a custody decree based on a change of circumstances. The plaintiff and the defendant are the parents of Mitchell Evans, Jr., who was born 1 May 1991. Mr. and Mrs. Evans divorced 25 May 1994. Upon divorce, Mrs. Evans, the defendant-appellant, was given primary physical custody of the child, and Mr. Evans was given visitation rights.

Later, plaintiff-husband and defendant-wife each remarried. The defendant-wife's new husband lives in Maryland. Mrs. Evans planned to relocate with the child to live with her new husband in Maryland, but has not yet moved. In response to defendant's plans to move, the plaintiff filed a "Motion in the Cause for Change of Circumstances" requesting that "the primary care, custody and control of the child be placed with the Plaintiff." The plaintiff also requested "[t]hat the court order that the child not be taken out of the State of North Carolina except as is reasonably necessary for brief vacations and trips for travel . . . ."

After a hearing, the trial court made the following pertinent findings of fact:

> 5. That the parties developed a pattern soon after they separated wherein the Plaintiff did in fact visit with the child every other weekend, and the parties seemed to have little trouble in reaching an agreement on holiday and summer time visitation.

> 6. That at some point in early to mid 1997 the parties developed a pattern where for one six month period, in addition to his other visitation, the Plaintiff would pick up the child after school on Monday, Tuesday and Wednesday, and keep him until the Defendant would pick him up that evening . . . in the next six month period the Plaintiff would have the child on Tuesday and Thursday for the same purposes and under the same circumstances. That this was done to accommodate the Defendant in educational endeavors that she was pursuing at one of the local community colleges, and by the agreement of the parties.

> 7. That the Plaintiff presented in court calendars, journals that he kept, and graphs that he had prepared based on this information and a daily planner that he kept, and alleged to the court that according to his books and records and his recollection that he had kept the child approximately fifty-four (54%) percent of the child's waking hours during the last fifteen months. . . .

> 8. That at a point in time after Plaintiff had filed his Motion, he remarried to the person he has had a consistent and stable relationship with for over four years. . . . [T]hat she is a responsible person, who has developed a good relationship with the minor child.

> 9. That the Defendant has also remarried, and her husband, who is fourteen years her senior, is divorced and owns his home in the State of Maryland . . . . [H]er marriage to him was one of the reasons leading to this lawsuit, as she had intended to relocate with this minor child to the State of Maryland.

> 10. That there was much testimony from both of the parties, and their family members on both sides, and the court found as a fact that the child as [sic] an excellent relationship with all of his extended family. That the child's grandparents, aunts and uncles,

and many other kin people live within thirty miles of both the mother and the father's current residences. . . .

. . . .

12. That the child is enrolled and in attendance at the school that he normally would attend while living in this community. That he is also enrolled in a day care. That both the school and the day care are environments the child has become used and accustomed to, where he has developed friendships and ties to the community.

Based on these findings, the trial court made the following pertinent conclusions of law:

2. That the court finds that there are in fact substantial and material changes of circumstances effecting [sic] the welfare of the child and justifying change or modification of past orders of this court insuring that the child will not be taken from the State of North Carolina. That said reasons include, but are not limited to, the following:

(a) The child's escalating and material and important relationship with his father over the course of the last fifteen months and the fact this is a young male child who is more and more in need of the guidance and involvement with his father;

(b) The fact that virtually all of the child's extended family have been heavily involved in his life on a regular basis and live within thirty miles of the homes of both parents;

(c) The fact that the child was born and raised in this community where he has spent all of his life, and is in attendance at school and day cares where he has established other ties to this area.

3. That in the event that the Defendant shall determine to relocate to Maryland, then the primary custody of the child shall be assigned to the Plaintiff with reasonable visitation designated to the Defendant.

4. That in the event that the Defendant shall determine that she shall remain in this area then the parties shall continue to share joint custody and visitation with the Plaintiff . . . .

5. That if the child were to be removed from the State of North Carolina at this time it would have an adverse effect on

EVANS v. EVANS

[138 N.C. App. 135 (2000)]

the relationship of the child with his father and his extended family.

The trial court then ruled "[t]hat for so long as the Defendant shall continue to remain in the immediate vicinity, then the parties shall continue to have and share joint custody of the minor child, with the primary placement with the Defendant." However, if the defendant-mother leaves North Carolina to join her new husband in Maryland, then the primary custody of the child will be awarded to the plaintiff-father. The record on appeal indicates that the mother currently remains in North Carolina. The defendant-mother appeals from this ruling.

[1] We first address whether the trial court's findings of fact support its conclusions of law and the judgment entered. Once the custody of a minor child is determined by a court, that order cannot be altered until it is determined (1) that there has been a substantial change in circumstances affecting the welfare of the child, *see Hamilton v. Hamilton,* 93 N.C. App. 639, 647, 379 S.E.2d 93, 97 (1989), N.C.G.S. § 50-13.7(a) (1999); and (2) a change in custody is in the best interest of the child. *See Thomas v. Thomas,* 259 N.C. 461, 467, 130 S.E.2d 871, 876 (1963). A party seeking modification of a child custody order bears the burden of proving the existence of a substantial change in circumstances affecting the welfare of the child. *See Crosby v. Crosby,* 272 N.C. 235, 237, 158 S.E.2d 77, 79 (1967). The change in circumstances need not have adverse effects on the child. *See Pulliam v. Smith,* 348 N.C. 616, 501 S.E.2d 898 (1998). ("[A] showing of a change in circumstances that is, or is likely to be, beneficial to the child may also warrant a change in custody." *Id.* at 620, 501 S.E.2d at 900.)

If the party bearing the burden of proof does not show that there has been a substantial change in circumstances, the court does not reach the "best interest" question. *See Ramirez-Barker v. Barker,* 107 N.C. App. 71, 77, 418 S.E.2d 675, 678 (1992). However, if the party *does* show that there has been a substantial change in circumstances, there is no burden of proof on the "best interest" question. *See In re Shue,* 311 N.C. 586, 597, 319 S.E.2d 567, 574 (1984).

Although the parties have an obligation to provide the court with any pertinent evidence relating to the "best interest" question, the trial court has the ultimate responsibility of requiring production of any evidence that may be competent and relevant on the issue.

The "best interest" question is thus more inquisitorial in nature than adversarial.

*Ramirez-Barker*, 107 N.C. App. at 78, 418 S.E.2d at 679.

The court need not wait for any adverse effects on the child to manifest themselves before the court can alter custody. *See, e.g., Perdue v. Perdue*, 76 N.C. App. 600, 334 S.E.2d 86 (1985). "It is neither 'necessary nor desirable to wait until the child is actually harmed to make a change' in custody." *Ramirez-Barker*, 107 N.C. App. at 78, 418 S.E.2d at 679 (quoting *Domingues v. Johnson*, 323 Md. 486, 499, 593 A.2d 1133, 1139 (1991)). However, evidence of "speculation or conjecture that a detrimental change may take place sometime in the future" will not support a change in custody. *Wehlau v. Witek*, 75 N.C. App. 596, 599, 331 S.E.2d 223, 225 (1985).

Here, the father argues that the mother's proposed relocation after her remarriage presents a sufficient change of circumstances to justify a modification of the custody order. However, remarriage, in and of itself, is not a sufficient change of circumstance affecting the welfare of the child to justify modification of the child custody order without a finding of fact indicating the effect of the remarriage on the child. *See Kelly v. Kelly*, 77 N.C. App. 632, 636, 335 S.E.2d 780, 783 (1985). *See also Hassell v. Means*, 42 N.C. App. 524, 531, 257 S.E.2d 123, 127, *disc. rev. denied*, 298 N.C. 568, 261 S.E.2d 122 (1979). Similarly, a change in the custodial parent's residence is not itself a substantial change in circumstances affecting the welfare of the child which justifies a modification of a custody decree. *See Gordon v. Gordon*, 46 N.C. App. 495, 500, 265 S.E.2d 425, 428 (1980).

In *Gordon v. Gordon*, 46 N.C. App. 495, 265 S.E.2d 425 (1980), the trial court ordered a change in primary custody of a child to the mother after concluding that there had been a substantial change in circumstances because the father and child had relocated. This Court vacated the trial court's order, stating:

In the case *sub judice*, the only finding of change of circumstance is that the child has moved from his original home to "strange," i.e. unfamiliar neighborhoods. There are no findings that the moves proved disruptive or detrimental to the child's welfare; that the home and surrounding neighborhood in which the child presently lives differs from his original home, is inadequate, or has an adverse affect on the child's welfare or that the placement of the child in an unfamiliar neighborhood has had any impact on

the child's adjustment. The mere fact that either parent changes his residence is not a substantial change of circumstance.

*Id.* at 500, 265 S.E.2d at 428.

Here, the trial court found that the proposed relocation would adversely affect the relationship between the father and his child. However, the court made no findings of fact indicating the effect of the remarriage and relocation on the child himself. The trial court's findings do not discuss the impact of the proposed move on the child.

Further, the trial court did not address the best interest question explicitly. "Before awarding custody of a child to a particular party, the trial court must conclude as a matter of law that the award of custody to that particular party 'will best promote the interest and welfare of the child.'" *Steele v. Steele*, 36 N.C. App. 601, 604, 244 S.E.2d 466, 468 (1978) (quoting N.C.G.S. § 50-13.2(a)). The welfare of the child is the "polar star" which guides the court's discretion in custody determinations. *See Pulliam*, 348 N.C. at 619, 501 S.E.2d at 899.

The facts in this case are similar to those in *Griffith v. Griffith*, 240 N.C. 271, 81 S.E.2d 918 (1954). There, the custodial mother remarried and planned to move with her daughter to live with her new husband in New Jersey. In light of the proposed move, the trial court ordered that primary custody be awarded to the father. This Court reversed the trial court's order, concluding that the trial court had failed to properly evaluate the best interests of the child. The *Griffith* Court stated:

[T]he court's primary concern is the furtherance of the welfare and best interests of the child and its placement in the home environment that will be most conducive to the full development of its physical, mental and moral faculties. All other factors, including visitorial rights of the other applicant, will be deferred or subordinated to these considerations, and if the child's welfare and best interests will be better promoted by granting permission to remove the child from the State, the court should not hesitate to do so.

*Id.* at 275, 81 S.E.2d at 921. The *Griffith* Court considered cases from several other jurisdictions involving relocation and custody disputes. The Court stated:

In these and other instances the question arises whether the person having custody of a child or to whom custody would other-

wise be granted is to be tied down permanently to the state which awards custody. The result of the decisions is that where the custodian has a good reason for living in another state and such course is consistent with the welfare of the child, the court will permit such removal or grant custody to the nonresident . . . .

*Id.* at 276, 81 S.E.2d at 922. The trial court must make a comparison between the two applicants considering all factors that indicate which of the two is "best-fitted to give the child the home-life, care, and supervision that will be most conducive to its well-being." *Id.* at 275, 81 S.E.2d at 921.

In evaluating the best interests of a child in a proposed relocation, the trial court may appropriately consider several factors including:

[T]he advantages of the relocation in terms of its capacity to improve the life of the child; the motives of the custodial parent in seeking the move; the likelihood that the custodial parent will comply with visitation orders when he or she is no longer subject to the jurisdiction of the courts of North Carolina; the integrity of the noncustodial parent in resisting the relocation; and the likelihood that a realistic visitation schedule can be arranged which will preserve and foster the parental relationship with the noncustodial parent.

*Ramirez-Barker,* 107 N.C. App. at 80, 418 S.E.2d at 680.

Here, the trial court found only that the proposed relocation would adversely affect the relationship between the father and his child. The trial court made no other findings about the effect of the proposed relocation on the child. We conclude that the facts found do not support the conclusions that there has been a substantial change in circumstances and that it is in the best interest of the child that the custody decree be amended. "[W]hen the court fails to find facts so that this Court can determine that the order is adequately supported by competent evidence and the welfare of the child is subserved, then the order entered thereon must be vacated and the case remanded for detailed findings of fact." *Crosby,* 272 N.C. at 238-39, 158 S.E.2d at 80. The order is vacated and remanded for detailed findings of fact on the issues of change of circumstance and best interests of the child.

**[2]** Next, we consider whether the trial judge erred in attempting to retain exclusive jurisdiction over this matter. In *Wolfe v. Wolfe,* 64 N.C. App. 249, 307 S.E.2d 400 (1983), *disc. review denied,* 310 N.C.

156, 311 S.E.2d 297 (1984), this Court held that the trial judge's efforts to retain exclusive jurisdiction in a child custody case were erroneous. Similarly, this Court recently held that the trial court erred in attempting to retain exclusive jurisdiction over future hearings in a determination of parental neglect case. *See In re McLean*, 135 N.C. App. 387, 521 S.E.2d 121 (1999). There, the Court noted "the legislature has not acted to grant authority to the trial court to retain jurisdiction in a domestic relations case." *Id.* at 399, 521 S.E.2d at 129. Accordingly, we conclude that the trial judge erred in attempting to retain jurisdiction over this custody matter.

Reversed and remanded.

Judges McGEE and HORTON concur.