NO. COA13-340

NORTH CAROLINA COURT OF APPEALS

Filed: 18 March 2014

THOMAS BRANDON SPOON
    Plaintiff,

v.

ABBY MELVIN SPOON
    Defendant

Alamance County
No. 07 CVD 2556

Appeal by defendant from order entered 20 September 2012 by Judge Kathryn Whitaker Overby in Alamance County District Court. Heard in the Court of Appeals 12 September 2013.

> *Wishart, Norris, Henninger & Pittman, PA, by Hillary D. Whitaker and Kathleen F. Treadwell, for plaintiff-appellee.*

> *Alexander, Miller, and Schupp, LLP, by Sydenham B. Alexander, Jr. and Jonathan J. Loch, for defendant-appellant.*

DAVIS, Judge.

Abby Melvin Spoon, now Abby Melvin Brown ("Defendant"), appeals from the trial court's amended order modifying the custody arrangements for the parties' three children. Defendant's primary arguments on appeal are that the trial court erred by (1) supplementing its conclusions of law in response to a Rule 52(b) motion filed by Thomas Brandon Spoon ("Plaintiff"); and (2) concluding that there had been a substantial change in

circumstances warranting the modification of custody. After careful review, we affirm the trial court's amended order.

**Factual Background**

Plaintiff and Defendant were married on 8 July 2000, separated on 19 October 2007, and divorced on 15 July 2009. The parties have three minor children: Allison, age 12; Rebecca, age 11; and Trevor, age 7.[1]

On 25 September 2007, Plaintiff filed an action seeking child custody, equitable distribution, and divorce from bed and board. On 26 September 2007, the trial court granted Plaintiff temporary custody of the minor children. Defendant filed an answer and counterclaims on 19 October 2007 seeking child custody, child support, divorce from bed and board, post-separation support, alimony, and equitable distribution. Both parties voluntarily dismissed their claims, and a consent order was entered on 14 November 2007 granting the parties joint custody of the children. The consent order also required the minor children to attend school in the Alamance Burlington School System ("ABSS").

Between December 2007 and December 2009, the parties filed various motions for contempt and to modify custody. On 15 June

---

[1] Pseudonyms are used in this opinion to protect the identities of the minor children.

2011, Plaintiff filed a motion requesting primary placement. A hearing was held on 1 August 2011. Before this hearing, the parties filed a written set of stipulations, stating the following:

> 1. Defendant, Abby Melvin Spoon, is moving to Orange County, North Carolina. A move to Orange County, North Carolina constitutes a substantial change in circumstances affecting the minor children of the parties.
>
> 2. If this Court determines that it is in the best interest of the minor children to remain in Alamance County, North Carolina, then Abby Melvin will not move from Alamance County, North Carolina, and placement will remain the same.

The trial court proceeded to enter an order determining that "[i]t is in the best interests of the minor children to remain in Alamance County, North Carolina."

In August of 2011, Defendant moved from Burlington to Mebane. On 28 October 2011, the trial court entered a consent order concerning custody and the children's school placement after Defendant withdrew the children from their previous school in Burlington and enrolled them in E.M. Yoder Elementary School in Mebane. In May of 2012, Defendant moved from Mebane to Chapel Hill. On 3 May 2012, Defendant filed motions seeking to modify the children's school placement to the Chapel Hill-Carrboro School District and to hold Plaintiff in contempt. On

22 May 2012, Plaintiff filed motions seeking to modify custody and hold Defendant in contempt. Plaintiff filed a second motion to hold Defendant in contempt on 31 July 2012.

On 14 August 2012, the trial court held a hearing on Plaintiff's motion to modify custody, Defendant's motion to modify school placement, and the parties' cross motions for contempt. The trial court entered an order on 24 August 2012 modifying the 28 October 2011 consent order. The trial court granted Plaintiff primary physical custody, giving him custody of the minor children for nine days out of every fourteen days, and Defendant secondary physical custody, giving her custody for the remaining five days. The trial court also held Defendant in contempt for moving the minor children without giving Plaintiff 90 days written notice as required by a previous court order; however, the trial court declined to sanction her.

On 4 September 2012, Plaintiff filed a motion under Rule 52(b) of the North Carolina Rules of Civil Procedure requesting that the trial court make additional findings of fact and conclusions of law. In response to Plaintiff's motion, the trial court entered an amended order on 20 September 2012. Defendant appealed to this Court.

**Analysis**

A trial court may order the modification of an existing child custody order if the court determines that there has been a substantial change of circumstances affecting the child's welfare and that modification is in the child's best interests. *Shipman v. Shipman*, 357 N.C. 471, 473, 586 S.E.2d 250, 253 (2003). Our review of a trial court's decision to modify an existing child custody order is limited to determining (1) whether the trial court's findings of fact are supported by substantial evidence; and (2) whether those findings of fact support its conclusions of law. *Id.* at 474-75, 586 S.E.2d at 253-54. Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Id.* at 474, 586 S.E.2d at 253. Because our trial courts "are vested with broad discretion in child custody matters" and have the opportunity to observe the witnesses and the parties, the trial court's findings of fact are conclusive on appeal if supported by evidence in the record, even if the evidence might also support a contrary finding. *Balawejder v. Balawejder*, ___ N.C. App. ___, ___, 721 S.E.2d 679, 689 (2011) (citation and quotation marks omitted).

Defendant asserts a number of arguments on appeal. We address each in turn.

## I. Rule 52(b) Motion

Defendant first argues that the trial court erred in amending its 24 August 2012 order in response to Plaintiff's Rule 52(b) motion. Rule 52(b) provides, in pertinent part, that "[u]pon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly." N.C. R. Civ. P.52(b).

Based on Plaintiff's Rule 52(b) motion, the trial court amended its prior order by adding the following italicized language to its second conclusion of law:

> 2. There has been a substantial change in circumstances that affects the welfare of the minor children *related to the defendant's moves to Mebane, North Carolina and Chapel Hill, North Carolina*.

The trial court also added a conclusion of law number 6 stating that "[t]he plaintiff is not in contempt." Defendant asserts that the plain language of Rule 52(b) does not allow such amendments to a trial court's original conclusions of law.

However, this Court has stated that "Rule 52(b) concerns amendments to the findings *and conclusions* relating to a final judgment . . . ." *O'Neill v. S. Nat'l Bank*, 40 N.C. App. 227, 231, 252 S.E.2d 231, 234 (1979) (emphasis added). We also look

to federal cases for guidance on this issue as our Court has held that "federal court decisions are pertinent" to our analysis of Rule 52(b) because "North Carolina's Rule 52(b) mirrors Rule 52(b) of the Federal Rules of Civil Procedure." *Parrish v. Cole*, 38 N.C. App. 691, 693, 248 S.E.2d 878, 879 (1978). Federal case law supports the proposition that Rule 52(b) gives a trial court "the power to amend its findings of fact *and* conclusions of law." *Nat'l Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc.*, 899 F.2d 119, 124 (1st Cir. 1990) (emphasis added); *see Shivers v. Grubbs*, 747 F.Supp. 434, 436 (S.D. Ohio 1990) ("The primary purpose of a Rule 52(b) motion is to enable the party to obtain a correct understanding of the Court's findings, typically for appeal purposes. In doing so the movant raises questions of substance by seeking reconsideration of material findings of fact *or* conclusions of law." (emphasis added)). Thus, we conclude that the trial court possessed authority under Rule 52(b) to amend its conclusions of law.

**II. 3 August 2011 Stipulation**

Defendant next contends that the trial court erred by relying on the 3 August 2011 stipulation — which stated that "[a] move to Orange County, North Carolina constitutes a

substantial change in circumstances affecting the minor children of the parties" — in concluding that a substantial change in circumstances had occurred. Specifically, she argues that "[t]he fact that Judge Overby drafted her own order, the presence of certain Findings of Fact in that order which suggest she may have worked off a previous electronic file, the addition of conclusions of law pursuant to a Rule 52 motion, and the absence of required findings of fact strongly indicate that the trial court had again accepted the Stipulation as a conclusion of law."

Defendant correctly notes that "whether there has been a substantial change of circumstances is a legal conclusion, which must be supported by adequate findings of fact" and that the requirement that a trial court find a substantial change in circumstances before modifying custody cannot be waived by the parties. *Hibshman v. Hibshman*, 212 N.C. App. 113, 121, 710 S.E.2d 438, 444 (2011) (citation and quotation marks omitted). Our Court has also explained that "stipulations as to questions of law are generally held invalid and ineffective, and not binding upon the courts, either trial or appellate." *In re A.K.D.*, ___ N.C. App. ___, ___, 745 S.E.2d 7, 9 (2013) (citation, quotation marks, and brackets omitted).

However, it is well established that "[a]n appellate court is not required to, and should not, assume error by the trial judge when none appears on the record before the appellate court." *State v. Williams*, 274 N.C. 328, 333, 163 S.E.2d 353, 357 (1968). Here, the only reference the trial court made to the parties' 3 August 2011 stipulation is in finding of fact 5 in which the trial court provides the entire procedural history of the case. There is no indication that the trial court sought to avoid its obligation to determine whether a substantial change in circumstances had occurred — in stark contrast to the trial court's actions in *Hibshman*.

In *Hibshman*, the trial court initially granted custody of the minor children to the mother during the school year. *Hibshman*, 212 N.C. App. at 122, 710 S.E.2d at 444. The order conditioned this custody arrangement on the mother "maintaining a home in the Granite Quarry Elementary School district" and provided that if she moved out of the school district, "this order may be modified without a showing of a substantial change in circumstances." *Id.* When the trial court later modified the custody order, it "explicitly stated that it was not considering whether a substantial change in circumstances warranting a change in custody had occurred" and instead expressly relied

upon the above-quoted provision of the original custody order. *Id.*

Unlike in *Hibshman*, the trial court here did not disregard its duty to determine whether a substantial change in circumstances had occurred. The trial court's order does not suggest that it relied upon the parties' prior stipulation in any way when it concluded that there had been a substantial change in circumstances. Therefore, we decline to assume error.

**III. Substantial Change in Circumstances**

Defendant's next several arguments on appeal relate to the trial court's conclusion that "[t]here has been a substantial change in circumstances that affects the welfare of the minor children related to the defendant's moves to Mebane, North Carolina and Chapel Hill, North Carolina." Defendant asserts that the trial court erred in making this conclusion because (1) the change in circumstances must "substantially affect" the children's welfare; (2) the trial court relied on a change that occurred prior to the entry of the previous custody order; and (3) relocating to another county is not a substantial change in circumstances where the evidence fails to establish a sufficient nexus between the relocation and the children's welfare.

**A. "Substantially affects" the children's welfare**

Citing *Spence v. Durham*, 283 N.C. 671, 198 S.E.2d 537 (1973), Defendant claims that modification was improper here because the trial court was required to find that the moves to Mebane and Chapel Hill constituted a *substantial* change in circumstances that *substantially* affected the children's welfare.

In *Spence*, our Supreme Court stated that modification of a child custody order is appropriate upon a showing of "any change of circumstances substantially affecting the welfare of the children." *Id.* at 684, 198 S.E.2d at 545. Since *Spence*, however, our appellate courts have repeatedly articulated the standard for modification of a child custody order as a substantial change of circumstances affecting the welfare of the children. *See Shipman*, 357 N.C. at 473, 586 S.E.2d at 253 ("It is well established in this jurisdiction that a trial court may order a modification of an existing child custody order between two natural parents if the party moving for modification shows that a substantial change of circumstances affecting the welfare of the child warrants a change in custody" (citation and internal quotation marks omitted)); *Stephens v. Stephens*, 213 N.C. App. 495, 498, 715 S.E.2d 168, 171 (2011) ("In granting the Motion to Modify Custody, the trial court must have first

appropriately concluded that there was a substantial change in circumstances and that the change affected the welfare of the minor child or children.").

Thus, the trial court applied the appropriate standard in concluding that "[t]here has been a substantial change in circumstances that affects the welfare of the minor children related to the defendant's moves to Mebane, North Carolina and Chapel Hill, North Carolina."  Defendant's argument, therefore, is overruled.

**B. Significance of Fact that Defendant's Move to Mebane Occurred Prior to Entry of 28 October 2011 Custody Order**

Defendant next argues that the trial court erred in considering her move to Mebane, North Carolina when making its determination that a substantial change of circumstances had occurred, claiming that she had moved to Mebane in August of 2011, which was prior to the entry of the 28 October 2011 custody order.  As such, Defendant, citing *Tucker v. Tucker*, 288 N.C. 81, 216 S.E.2d 1 (1975), asserts that her relocation to Mebane was not relevant because only changes that have occurred *since* 28 October 2011 should be considered when ruling on the motion to modify custody.

Defendant is mistaken, however, because the trial court's actual conclusion was that a substantial change of circumstances

"*related* to the defendant's moves to Mebane, North Carolina and Chapel Hill, North Carolina" had occurred. (Emphasis added.) While the move to Mebane did, in fact, take place two months before the previous custody order was entered, the trial court's findings and the record evidence show that the effects of the relocation on the minor children did not manifest themselves until *after* the entry of that order. Our review of the trial court's findings reveals that the trial court was concerned about Defendant's history of uprooting, or attempting to uproot, the minor children without first consulting Plaintiff and the ramifications that these actions had on the children.

Indeed, the trial court's findings pertaining to Defendant's move to Mebane primarily refer to (1) the children's emotional well-being and school performance; and (2) Defendant's actions in attempting to diminish the amount of time the children spent with Plaintiff, once they had moved.[2] As such,

---

[2] Defendant claims that findings of fact 14, 16, 18, 32, 33, 37, 47, 49, 62, and 66 address events that occurred before the entry of the consent order and must be disregarded. We first note that Defendant merely lists these findings by number and provides no specific argument regarding any of the findings as required by Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure. Moreover, we believe these findings, which address the numerous times Defendant has attempted to relocate and unilaterally change the children's school placements, shed light on events occurring *after* the 28 October 2011 consent order was entered.

the effects of the move to Mebane, which became apparent following the entry of the 28 October 2011 consent order, were relevant and properly considered by the trial court in determining whether a substantial change in circumstances had occurred.

### C. Sufficiency of Defendant's Relocations to Show a Substantial Change in Circumstances

Defendant also argues that the trial court erred in concluding that there had been a substantial change in circumstances because "a change in the custodial parent's residence is not itself a substantial change in circumstances affecting the welfare of the child which justifies a modification of a custody decree." *Evans v. Evans*, 138 N.C. App. 135, 140, 530 S.E.2d 576, 579 (2000); *see Harrington v. Harrington*, 16 N.C. App. 628, 630, 192 S.E.2d 638, 639 (1972) (holding that trial court erred in modifying custody of minor child when "[t]he only finding of change in circumstances as to [the minor child] was that defendant is now residing in Mecklenburg County, North Carolina" (internal quotation marks omitted)).

In *Evans*, our Court explained that the relocation and remarriage of one of the parties could not have been deemed a substantial change in circumstances warranting modification of

custody because the trial court "made no findings of fact indicating the effect of the remarriage and relocation on the child himself . . . [and did] not discuss the impact of the proposed move on the child." *Evans*, 138 N.C. App. at 141, 530 S.E.2d at 580.

In *Shipman*, our Supreme Court further elaborated on the need to show the relationship between the change in circumstances and the welfare of the child, holding that

> [i]n situations where the substantial change involves a discrete set of circumstances such as a move on the part of a parent, a parent's cohabitation, or a change in a parent's sexual orientation, the effects of the change on the welfare of the child are not self-evident and therefore necessitate a showing of evidence directly linking the change to the welfare of the child. . . . Evidence linking these and other circumstances to the child's welfare might consist of assessments of the minor child's mental well-being by a qualified mental health professional, school records, or testimony from the child or the parent.

*Shipman*, 357 N.C. at 478, 586 S.E.2d at 256 (internal citations and emphasis omitted).

Here, unlike in *Evans*, the trial court made multiple findings concerning how the two relocations (and resultant change in school placement) within a ten month period affected the minor children. The trial court found that the move to

Mebane — abruptly followed by another move to Chapel Hill — "added stress to the minor children" because they were distanced from their friends and extracurricular activities when they moved to Mebane and because the situation was repeated when they moved to Chapel Hill. The trial court also determined that both the children's teachers and Plaintiff had noticed a change in the children — observing that they were more clingy, tearful, and upset since the moves. The court found that Allison, the oldest child, had especially struggled with moving and going to a new school and that her dance instructor had observed "a change in [her] demeanor" such that she would frequently cry and be "visibly upset."

Additionally, the trial court made findings that since the two moves and her remarriage, Defendant has withdrawn the children from activities that Plaintiff helps with or coaches and has prioritized the development of relationships between the children and their step-family over their ability to spend time with Plaintiff. *See Stephens*, 213 N.C. App. at 499, 715 S.E.2d at 172 (explaining that interference with and attempts to frustrate relationship between children and other parent can be considered in determining whether modification of custody is appropriate). These findings are uncontested by Defendant and

thus are binding on appeal. *See Crenshaw v. Williams*, 211 N.C. App. 136, 142, 710 S.E.2d 227, 232 (2011) ("Unchallenged findings are presumed to be supported by competent evidence and are binding on appeal." (citation, quotation marks, and brackets omitted)).

The trial court also made findings regarding Allison's and Rebecca's declining academic performance since they changed schools. Defendant only challenges the finding concerning Rebecca's academic performance. As such, the trial court's finding regarding Allison's school performance is presumed to be supported by competent evidence and is binding on appeal. *See id.* With respect to Rebecca's school performance, the trial court found

> 43. The middle child [Rebecca] is a rising 4th grader. She attended Highland for kindergarten, first and second grade. She attended Yoder for third grade. From kindergarten through second grade her grades progressively increased from eleven "needs improvement"s (and 205 "satisfactory" marks) in kindergarten to one "needs improvement" (and 215 "satisfactory" marks) in first grade to all "satisfactory" (209 "satisfactory") marks in second grade, with no "needs improvement" marks. In third grade children receive their first "letter" grades, but they also continue to receive "needs improvement," "satisfactory" or "unsatisfactory" marks. In third grade, the middle child received twenty-one "needs improvement" marks and 170 "satisfactory"

marks. The middle child took the end of grade (EOG) tests for the first time while at Yoder. She passed math on the first try. She failed the English EOG and had to retake it. The middle child passed the English EOG on the second try. The middle child's grades (or marks) have diminished while she attended Yoder.

We cannot agree with Defendant's assertion that the trial court's findings on this issue were unsupported by competent evidence. Rebecca's report cards from her new school in Mebane — introduced into evidence by Defendant — show that Rebecca received more "needs improvement" marks and less "satisfactory" marks than in her previous years of schooling. As such, the trial court's finding that Rebecca's grades diminished is supported by competent evidence in the record.

Thus, the trial court determined that the children's emotional and academic well-being were adversely impacted by the moves to Mebane and Chapel Hill. As such, we hold that the trial court's order modifying custody (1) demonstrates that there has been a substantial change in circumstances; and (2) establishes a sufficient nexus between the change in circumstances and the children's welfare.

## IV. Best Interests of the Children

Defendant also contends that the trial court erred in concluding that it was in the best interests of the minor

children to modify the previous custody order because the trial court "failed to specify in its findings of fact which evidence presented convinced it that modification of the 28 October 2011 Order was in the best interest of the children." We disagree.

> Once the trial court makes the threshold determination that a substantial change has occurred, the court then must consider whether a change in custody would be in the best interests of the child. As long as there is competent evidence to support the trial court's findings, its determination as to the child's best interests cannot be upset absent a manifest abuse of discretion.

*Metz v. Metz*, 138 N.C. App. 538, 540-41, 530 S.E.2d 79, 81 (2000) (internal citation omitted). In determining whether modification of custody is in the best interests of the minor children, "any evidence which is competent and relevant to a showing of the best interest . . . must be heard and considered by the trial court." *In re P.O.*, 207 N.C. App. 35, 39, 698 S.E.2d 525, 529 (2010) (citation and emphasis omitted).

"When determining whether the findings in an order modifying child custody are adequate to support its conclusions, this Court examines the entire order. The trial court is not constrained to using certain and specific buzz words or phrases in its order." *Lang v. Lang*, 197 N.C. App. 746, 748, 678 S.E.2d 395, 397 (2009) (citation, quotation marks, and brackets

omitted). In this case, the trial court's findings, taken together, support its conclusion that modification of custody was in the best interests of the minor children. As discussed above, the trial court found that the two relocations have had a negative impact on the children's emotional and academic well-being and that since the moves, Defendant has withdrawn the children from extracurricular activities with which Plaintiff assists in order to limit their time with him.

The trial court also found that Plaintiff's living situation has been more stable over the past several years than Defendant's. Specifically, the trial court noted that Plaintiff has lived in the same house since his separation from Defendant and has not been engaged or married during this time. The trial court found that, conversely, Defendant has been engaged twice, has moved twice, has transferred the children to a different school district, and is now attempting to change the children's school placement once again. The trial court also determined that at Plaintiff's house, the children had their own bedrooms, were closer to their core group of friends and to their extracurricular activities, and that the flexibility of Plaintiff's work schedule allows him to pick up the children from school and transport them to their afterschool activities.

Based on our examination of the entire order and its extensive findings of fact, we are satisfied that the trial court did not abuse its discretion in concluding that modification of custody was in the best interests of the minor children.

**V. Motion to Modify School Placement**

Finally, Defendant argues that the trial court erred by failing to explicitly rule on her motion to modify school placement. We note that the decretal portion of the 20 September 2012 order states that "[t]he plaintiff is responsible for and shall enroll the minor children in school in the ABSS," indicating that the trial court considered and denied Defendant's motion to modify the children's school placement to the Chapel Hill-Carrboro School District. Furthermore, Defendant's argument on this issue is premised on her assertion that the trial court erred in modifying custody, an assertion we reject for the reasons explained herein.[3]

**Conclusion**

For the reasons stated above, we affirm the trial court's order modifying custody.

AFFIRMED.

---

[3] We decline to address Defendant's remaining arguments because they merely consist of her contentions as to what should occur in the event that the trial court's 20 September 2012 order is vacated.

Judges HUNTER, JR. and ERVIN concur.