ELMORE, Judge.
 

 *681
 
 Defendant Ella Demetrice Farmer ("Mother") appeals a custody modification order that also set aside a prior custody modification order. She argues the order should be vacated and this case remanded for a new hearing because no evidence was presented to support it. We vacate the portions of the order relating to custody modification and remand the case to the trial court for further fact-finding. In its discretion, the court may hear and consider additional evidence.
 

 *682
 

 I. Background
 

 Mother and Father married in Georgia in 2000 and separated in 2006. Two children were born of the marriage. About three months after separation, Father filed a complaint seeking split custody and child support.
 

 On 17 October 2006, the trial court entered an initial custody order awarding Mother primary legal and physical custody of three-year-old, Tracy, and one-year-old, Tommy,
 
 [1]
 
 and awarding Father visitation from Wednesday to Sunday during the last week of each month and for four non-consecutive weeks each summer. The court also ordered Father to pay $547.00 in child support per month. About two weeks later, the court amended its order and modified the visitation schedule, eliminating summer visitation and allowing Father alternating weekend visits until such time as visitation would be reconsidered on 2 March 2007 ("Initial Custody Order"). The record is unclear whether this reconsideration ever took place.
 

 About six years later, on 5 October 2012, Father filed a "Motion to Modify Custody/Visitation Order." Father alleged that the children "are old enough now to travel and stay overnight while visiting [him] in Georgia," and requested "Custody/Visitation" be modified to replace alternating weekend visits with visitation rights essentially aligning with the children's school breaks. Father requested "Custody/Visitation" during even-numbered years for President's Day, one week during spring break, nine consecutive weeks during summer break, Columbus Day, Thanksgiving Day, and the second half of the children's Christmas break. During odd-numbered years, Father essentially requested the same schedule save for replacing visitation on Thanksgiving Day with Memorial Day, as well as replacing second-half visitation during the children's Christmas break with first-half visitation.
 

 Although the record indicates Father's motion was heard on 31 January 2013, a corresponding order was not entered until 22 January 2015 ("Jan. 2015 Order"). The Jan. 2015 Order failed to acknowledge the Initial Custody Order, stated the order arose from "[Father's] complaint for child custody" yet found "this matter is before this court pursuant to [Father's] motion to modify custody/visitation of the children," and purported to make an initial custody and visitation determination, concluding "[i]t would be in the children's best interest that [Mother] have custody and control of the minor children and that [Father] exercise visitation...." The Jan. 2015 Order awarded Mother primary custody
 
 *683
 
 of the children and awarded Father alternating weekend visitation, summer visitation for the entire month of July, alternating visitation for Thanksgiving, and visitation from 25 December until 2 January each year.
 
 *666
 
 On 3 March 2015, Father moved under Rule 60 to set aside the Jan. 2015 Order because it purported to make an initial custody determination, which had already been adjudicated in the Initial Order, and because it failed to address,
 
 inter alia
 
 , his "request to suspend every other weekend visitation" and "add additional summer visitation and holiday visits." Father alleged his purpose for filing the "Motion to Modify Custody/Visitation Order" was to "modify the visitation schedule to suspend weekend visits because [he] reside[d] in Georgia and [Mother] reside[d] in North Carolina," and he was "financially unable to travel to and from Georgia every other Friday and Sunday to exercise visits with the minor children." Father also requested the court "clarify the Order by suspending weekend visits" and "increase [Father's] visitation ... during summer and holidays."
 

 After a 1 June 2015 hearing on Father's motion, the court entered an order setting aside the Jan. 2015 Order due to mistake of circumstance, i.e., that Father lives six hours away, and modifying the visitation schedule ("Jun. 2015 Order"). Most relevant here, the Jun. 2015 Order eliminated weekend visitation, allowed Father visitation rights for certain school holidays and for eight consecutive weeks during summer break, and ordered that Father's "child support obligation ... be suspended during ... periods of custody."
 

 In response, on 29 June 2015, Mother filed motions to stay the Jun. 2015 Order and for a new trial or to reopen evidence, or, in the alternative, to set aside the Jun. 2015 Order on the basis of mistake and good cause. Mother alleged the Jun. 2015 Order should be set aside under Rule 60 because "there was no testimonial evidence presented at the hearing." Further, Mother alleged, because no evidence was presented, there was "no basis to modify the current [custody] order," and because Father never filed a motion to modify child support, "the issue of child support was not properly before the [c]ourt and could not be addressed."
 

 Additionally, in her motions, Mother alleged that Father had not seen the children in almost three years, that the children "have sent hundreds of requests to come get them from [Father's] home over the last two ... weeks," and "have threatened to run away from [Father's] home." That same day, on 29 June 2015, the trial court entered an
 
 ex parte
 
 order granting temporary injunctive relief in Mother's favor,
 
 *684
 
 staying enforcement of the Jun. 2015 Order, reinstating the Jan. 2015 Order, and ordering Father to show cause on 10 July 2015 as to why Mother's motion for temporary relief should not be granted.
 

 It is unclear from the record who had custody of the children during this time, or whether the show cause hearing was ever held. It appears from a continuance order that, on 10 July 2015, the Father "had not yet been served with th[e] action," and the court rescheduled the matter for 31 July 2015. It appears from a subsequent continuance order that, on 31 July 2015, Father still "had not yet been served with th[e] action," but rather than rescheduling the matter, in its order the court decreed that its
 
 ex parte
 
 order "shall remain in full force and effect pending further orders of the court."
 

 On 23 October 2015, the court heard Mother's motions for a new trial or to reopen evidence, or, in the alternative, to set aside the Jun. 2015 Order. Father was present for this hearing. Mother argued that, at the 1 June 2015 hearing on Father's motion to set aside the Jan. 2015 Order, no evidence was presented or considered yet the court entered an order allowing Father's motion to set aside the order and significantly modified visitation. Further, Mother argued, the Jan. 2015 Order decreed that Father's child support obligations be suspended during periods when he had custody of the children; however, child support was never addressed at the hearing and there was no pending motion to modify child support. On or around 3 February 2016, the court entered an order ("Feb. 2016 Order") setting aside the Jun. 2015 Order on the basis that it improperly modified child support without a properly pending motion, dismissing as moot Mother's motions for a new trial or to reopen evidence, and drastically modifying visitation. Mother appeals.
 

 II. Analysis
 

 Mother contends the trial court erred by entering the Feb. 2016 Order because (1) "it
 
 *667
 
 was not based on any evidence" and (2) "neither party resided in Robeson County," so "the court was without proper venue to rule in the case."
 

 A. Venue
 

 As an initial matter, Mother waived her right to challenge venue on appeal by participating in the Robeson County proceedings and never contesting venue.
 
 See
 

 Zetino-Cruz v. Benitez-Zetino
 
 , --- N.C.App. ----, ----,
 
 791 S.E.2d 100
 
 , 104 (2016) ("[V]enue is not jurisdictional and may be waived." (citing
 
 Bass v. Bass
 
 ,
 
 43 N.C.App. 212
 
 , 215,
 
 258 S.E.2d 391
 
 , 393 (1979) ("Plaintiff voluntarily appeared and participated in the 27 June
 
 *685
 
 1977 hearing on child support. He did not object to the venue or move for change of venue.... [H]e waived it.")). Accordingly, we decline to address this challenge.
 

 B. Visitation Modification Unsupported by Evidence
 

 Mother contends the court erred by entering the Feb. 2016 Order modifying custody and visitation because no evidence was presented at the hearing on the matter. We agree.
 

 Before a trial court may modify an existing custody order, it "must determine that a substantial change of circumstances has occurred and that the change has affected the children's welfare."
 
 Davis v. Davis
 
 ,
 
 229 N.C.App. 494
 
 , 502,
 
 748 S.E.2d 594
 
 , 600 (2013) (citing
 
 Shipman v. Shipman,
 

 357 N.C. 471
 
 , 474,
 
 586 S.E.2d 250
 
 , 253 (2003) ). A trial court must then "further conclude[ ] that a change in custody is in the child's best interests."
 
 Shipman
 
 ,
 
 357 N.C. at 474
 
 ,
 
 586 S.E.2d at 253
 
 .
 

 "Our review of a trial court's decision to modify an existing child custody order is limited to determining (1) whether the trial court's findings of fact are supported by substantial evidence; and (2) whether those findings of fact support its conclusions of law."
 
 Spoon v. Spoon
 
 ,
 
 233 N.C.App. 38
 
 , 41,
 
 755 S.E.2d 66
 
 , 69 (2014) (citing
 
 Shipman
 
 ,
 
 357 N.C. at 474-75
 
 ,
 
 586 S.E.2d at
 
 253-54 ). " 'Absent an abuse of discretion, the trial court's decision in matters of child custody should not be upset on appeal.' "
 
 Dixon v. Gordon
 
 ,
 
 223 N.C.App. 365
 
 , 368,
 
 734 S.E.2d 299
 
 , 302 (2012) (quoting
 
 Everette v. Collins,
 

 176 N.C.App. 168
 
 , 171,
 
 625 S.E.2d 796
 
 , 798 (2006) ).
 

 However, when an order is entered affecting juveniles after a hearing in which "no evidence [is] presented, the trial court's findings of fact are unsupported, and its conclusions of law are in error."
 
 In re D.Y.
 
 ,
 
 202 N.C.App. 140
 
 , 143,
 
 688 S.E.2d 91
 
 , 93 (2010) (reversing permanency planning order that relied solely on written reports, prior court orders, and oral arguments by attorneys and remanding with instructions to hold a proper hearing);
 
 see also
 

 In re D.L.
 
 ,
 
 166 N.C.App. 574
 
 , 583,
 
 603 S.E.2d 376
 
 , 382 (2004) (same). Further, "when the court fails to find facts so that this Court can determine that ... the welfare of the child is subserved, then the order entered thereon must be vacated and the case remanded for detailed findings of fact."
 
 Evans v. Evans
 
 ,
 
 138 N.C.App. 135
 
 , 142,
 
 530 S.E.2d 576
 
 , 580 (2000) (quoting
 
 Crosby v. Crosby
 
 ,
 
 272 N.C. 235
 
 , 238-39,
 
 158 S.E.2d 77
 
 , 80 (1967) ).
 

 Here, the transcript reveals that the trial court never heard or considered evidence relating to custody modification at the hearing
 
 *686
 
 on Mother's motions to reopen evidence or to set aside the Jun. 2015 Order. Rather, the court attempted to mediate an agreement between the parties' attorneys to resolve the parties' visitation disputes, which it later memorialized in its Feb. 2016 Order.
 

 According to the transcript of the hearing on Mother's motions to reopen evidence or to set aside the Jun. 2015 Order, Mother argued that no evidence was presented or considered in the prior hearing on Father's motion to set aside the Jan. 2015 Order. Yet following that prior hearing, Mother argued, the court entered its Jun. 2015 Order, which granted Father's motion to set aside the Jan. 2015 Order; modified visitation significantly by awarding Father, who had not seen the children in nearly three years, visitation rights for the entire summer; and suspended Father's child support obligations when he had custody of the children. Mother argued that before making such a drastic modification, "the court needed to hear evidence about the
 
 *668
 
 fact that [Father] had not had visitation for a long period of time. And there needed to be some reintroduction before sending these kids down there [to Georgia] for a period of three months suddenly." Mother also argued that child support was never discussed at that hearing nor was there a pending motion for the trial court to issue a decision on child support. Accordingly, Mother explained to the trial court, she moved under Rules 52 and 59 to reopen evidence for a new trial that would allow her to present evidence regarding whether the Jan. 2015 Order should be set aside, or, alternatively, moved under Rule 60 to set aside the Jun. 2015 Order because there was no evidentiary basis for it. Yet rather than address Mother's motions, the trial court attempted to mediate the parties' visitation disputes:
 

 THE COURT: The case comes down-it still comes down to what your client wants. What does [Mother] want? ...
 

 ....
 

 THE COURT: Is [Father] agreeable to that?
 

 [FATHER'S COUNSEL]: Well, Your Honor, certainly not to having four weeks in the summer. That doesn't give him time to arrange for visitation, for holidays, for family events. Certainly, he's willing to break up the summer.
 

 ....
 

 THE COURT: All right, then what's-what's the disagreement then? It sounds like to me like it's-
 
 *687
 
 [MOTHER'S COUNSEL]: Your Honor, the disagreement is about the amount of time I guess that he wants during the summer, Your Honor....
 

 ....
 

 THE COURT: Yeah, I don't know what we're fighting about. I honestly don't.
 

 [FATHER'S COUNSEL]: I believe it's summer visits, Judge. I believe it's the amount of time. My client's-
 

 THE COURT: How much time does he want?
 

 [FATHER'S COUNSEL]: He would like the first three weeks, the children return to their mother the second two weeks, and then ... they would return to [Father] up until two weeks before school started.
 

 ....
 

 THE COURT: And what does she want?
 

 [MOTHER'S COUNSEL]: She's ... asking that he have four weeks with the kids broken up into two two-week[ ] increments.
 

 THE COURT: We're talking about the difference of two weeks, maybe?
 

 ....
 

 THE COURT: That's fine with me. She don't oppose to that [sic], does she?
 

 ....
 

 THE COURT: Okay. That's the order then.
 

 The transcript does not reflect that any evidence was actually presented or that the court ever considered whether there existed a substantial change in circumstances, how that change affected the children, or whether modifying visitation would be in the children's best interest.
 

 Following this hearing, the trial court entered its Feb. 2016 Order, which granted Mother's motion to set aside the Jun. 2015 Order on the basis that it made a child support determination without a properly pending motion on child support. The Feb. 2016 Order also dismissed as moot Mother's motions to reopen evidence or to hold a new hearing,
 
 *688
 
 allowed both parties' attorneys to withdraw, and modified in great detail child custody and the existing visitation schedule.
 

 When the findings of fact relating to jurisdiction and the prior history of the case are omitted, the provisions of the Feb. 2016 Order modifying visitation are supported by a single finding of fact: "It is appropriate for the visitation during the school year to be suspended because of [Father's] distance and summer to [be] expanded." Based on this finding, the trial court concluded as law: "There has been a substantial change in circumstances that affects the best interest[s] of the minor children." The Feb. 2016 Order then substantially modified the existing visitation arrangement, granting Father visitation rights during certain holidays and for six weeks during the children's summer break. Additionally, without explanation, the Feb. 2016 Order purported to change the children's
 
 *669
 
 legal custody, which the Initial Order vested solely with Mother, to joint legal custody between Mother and Father.
 

 The trial court's order was wholly inadequate to support these custody changes. Because no evidence was presented at the hearing, the findings are unsupported. Even if evidence supported those findings, they are "too meager" to support its conclusions and decrees.
 
 See, e.g.
 
 ,
 
 Dixon v. Dixon
 
 ,
 
 67 N.C.App. 73
 
 , 76-77,
 
 312 S.E.2d 669
 
 , 672 (1984) ("[C]ustody orders are routinely vacated where the 'findings of fact' consist of mere conclusory statements that the party being awarded custody is a fit and proper person to have custody and that it will be in the best interest of the child to award custody to that person. A custody order will also be vacated where the findings of fact are too meager to support the award."). "Without further fact-finding, we cannot determine whether the trial court's conclusions are supported by its findings."
 
 In re D.M.O.
 
 , --- N.C.App. ----, ----,
 
 794 S.E.2d 858
 
 , 866 (2016). Accordingly, we vacate the provisions of the Feb. 2016 Order relating to custody and visitation and remand this case to the trial court for appropriate findings and conclusions resolving these matters. In its discretion, the court may hear and consider additional evidence.
 

 On remand, we instruct the trial court to remain mindful that its "examination of whether to modify an existing child custody order is twofold."
 
 Shipman
 
 ,
 
 357 N.C. at 474
 
 ,
 
 586 S.E.2d at 253
 
 . First, "[t]he trial court must determine whether there was a change in circumstances and then must examine whether such a change affected the minor child."
 

 Id.
 

 To support a conclusion that a substantial change in circumstances occurred which affected the children, "the evidence must demonstrate a connection between the substantial change in circumstances and the welfare of the child, and flowing from that prerequisite is the requirement
 
 *689
 
 that the trial court make findings of fact regarding that connection."
 
 Id.
 
 at 478,
 
 586 S.E.2d at 255
 
 .
 

 Second, the trial court "must ... examine whether a change in custody is in the child's best interests. If the trial court concludes that modification is in the child's best interests, only then may the court order a modification of the original custody order."
 
 Id.
 
 at 474,
 
 586 S.E.2d at 253
 
 . "Whenever the trial court is determining the best interest of a child, any evidence which is competent and relevant to a showing of the best interest of that child must be heard and considered by the trial court, subject to the discretionary powers of the trial court to exclude cumulative testimony."
 
 In re Shue,
 

 311 N.C. 586
 
 , 597,
 
 319 S.E.2d 567
 
 , 574 (1984). "Without hearing and considering such evidence, the trial court cannot make an informed and intelligent decision concerning the best interest of the child."
 

 Id.
 

 We further emphasize that "a trial court's principal objective is to measure whether a change in custody will serve to promote the child's best interests."
 
 Shipman
 
 ,
 
 357 N.C. at 474
 
 ,
 
 586 S.E.2d at 253
 
 .
 

 III. Conclusion
 

 Because the trial court failed to conduct a proper hearing, consider evidence, or engage in the appropriate analysis before modifying the existing custody decree, we vacate the portions of the Feb. 2016 Order relating to custody and visitation. Because the Feb. 2016 Order set aside the Jun. 2015 Order modifying custody, which itself set aside the Jan. 2015 Order modifying custody, the custody arrangement established by the Initial Order remains in effect pending final resolution by the trial court of whether there has been a substantial change of circumstances since the Initial Order and whether modifying custody is in the children's best interests. We instruct the trial court on remand to make proper findings and conclusions under the appropriate analytical framework established by law, and, if necessary, to hold a swift and proper hearing resolving the matter.
 

 VACATED IN PART AND REMANDED.
 

 Judge ZACHARY concurs.
 

 Judge DILLON concurs in part, dissents in part by separate opinion.
 

 DILLON, Judge, concurring in part, dissenting in part.
 

 *690
 
 I concur with the majority concerning the issue of venue.
 

 *670
 
 I also concur with the majority's conclusion that the trial court erred in modifying custody in the Feb. 2016 Order without hearing evidence. However, I dissent from the majority's mandate that custody revert back to the arrangement set forth in the Initial Order entered in 2006. I conclude that custody should revert back to the June 2015 Order, entered just prior to the Feb. 2016 Order.
 

 There are four custody orders, entered by the trial court from 2006 to 2016, which are pertinent to this appeal. Mother's main contention is in regard to the summer visitation awarded to Father. These four orders awarding Father summer visitation are summarized as follows:
 

 1. The "Initial Order," entered November 2006, awarded Father four non-consecutive weeks of summer visitation. This visitation order was temporary in nature, stating "that the matter shall be reset before the undersigned [judge] for reconsideration of the visitation schedule."
 

 2. The "Jan. 2015 Order" awarded Father summer visitation for the entire month of July. This order also awarded Father visitation every other weekend during the remainder of the year. The trial court noted in the order that Father resided in Georgia. The trial court did not make any finding concerning changed circumstances but found that the new visitation schedule was in the best interest of the children.
 

 3. In its "June 2015 Order," the trial court extended Father's summer visitation from the month of July to eight consecutive weeks. The trial court did not consider the change to be a custody modification, but rather a correction of a mistake pursuant to Rule 60(b) which it had made in its prior order. Specifically, the court stated that it made a mistake in its prior Jan. 2015 order by failing to take into account where in Georgia Father lived. The trial court then noted that Father lived six hours from Mother and that this distance made regular weekend visitation unworkable and that eliminating the regular weekend visits was in the best interest of the children. Therefore, the trial court replaced Father's regular weekend visitation with extended summer visitation.
 

 4. In its "Feb. 2016 Order," the trial court modified Father's summer visitation from the entire summer to six weeks
 
 *691
 
 after Mother sought to reduce Father's summer visitation to four weeks. The trial court also denied Mother's motion to allow for an evidentiary hearing on custody. Mother had argued that the June 2015 order was a modification order; and, therefore, the trial court should have considered new evidence.
 

 Mother contends in her brief that the trial court impermissibly modified visitation twice without considering new evidence: (1) in its June 2015 Order, extending Father's summer visitation from the month of July to all summer; and (2) in its Feb. 2016 Order, reducing Father's summer visitation from eight weeks to six weeks, rather than to four weeks as she requested. In her brief, however, Mother only argues that the Feb. 2016 Order should be vacated.
 

 The majority agreed with Mother that the trial court improperly modified Father's summer visitation without hearing any evidence in its most recent order, the Feb. 2016 Order. I agree, as well. The majority, however, reinstated the visitation as set forth in the 2006 Initial Order (which appears to be a temporary custody order), rather than the more recent June 2015 Order or Jan. 2015 Order.
 

 I do not believe that the June 2015 Order was erroneous, notwithstanding the fact that the trial court did not base the June 2015 Order on new evidence. Rather, I believe that the trial court has authority pursuant to Rule 60(b) to set aside a custody order based on a mistake, without having to hear evidence of some change in circumstances.
 
 See
 
 N.C. Gen. Stat. § 1A-1, Rule 60(b)(1) ("[T]he court may relieve a party ... from a final judgment, order, or proceeding for ... [m]istake, inadvertence, surprise, or excusable neglect[.]"). Here, the trial court found that it had failed to consider
 
 where
 
 in Georgia Father resided when it awarded part of Father's visitation in the form of regular weekend visitation. The trial court corrected this failure in its June 2015 Order, finding that regular weekend visitations were
 
 not
 
 in the best interest of the children.
 

 *671
 
 Even if the trial court was correct in its Feb. 2016 Order to set aside the June 2015 Order (based on its failure to consider evidence), custody should revert back to the arrangement in the Jan. 2015 Order, not to the eleven-year-old Initial Order.
 

 In any event, I do not think the trial court was required to consider new evidence when it changed custody based on a mistake in a prior order.
 
 See
 
 N.C. Gen. Stat. § 1A-1, Rule 60(b). Therefore, my vote is to vacate the Feb. 2016 Order
 
 in its
 

 entirety
 
 , as requested by Mother, thereby reverting to the June 2015 Order, without prejudice to either party's right to seek modification of custody in the future.
 

 [1]
 

 Pseudonyms are used to protect the minors' identities.