WENDY ANN FORD, PLAINTIFF v. TIMOTHY OWEN WRIGHT, DEFENDANT

No. COA04-694

(Filed 3 May 2005)

**1. Child Support, Custody, and Visitation— custody—appellate review—standard**

In reviewing a motion for modification of child custody, an appellate court must examine the trial court's findings of fact to determine whether they are supported by substantial evidence. The trial courts have broad discretion in child custody matters; if there is substantial evidence to support the trial court's findings, those findings are conclusive on appeal even if contrary findings might be supported from the same record.

**2. Child Support, Custody, and Visitation— custody—change of circumstances—parents' communication**

The evidence in a change of custody proceeding that the parents were not communicating successfully about their child's

welfare was not sufficiently substantial to support findings that the parents' failure to communicate had jeopardized the success of the prior joint custodial arrangement. There was ample evidence that plaintiff and defendant had disagreements and verbal disputes, but had developed ways to communicate regarding their son's welfare. Furthermore, as the court had already considered the parties' past domestic troubles and communications difficulties in a prior order, modification was not in order without findings of additional changes in circumstances or conditions.

**3. Child Support, Custody, and Visitation— custody—change of circumstances—emotional trauma to child**

In a change of custody proceeding, the evidence was not substantial that unresolved issues and disagreements resulted in emotional trauma or harm to the child. Other than plaintiff's testimony regarding the child's normal reaction to a parental disagreement, no testimony was offered which supported a finding of emotional harm, and there was ample evidence supporting a finding that the child was happy.

**4. Child Support, Custody, and Visitation— custody—change of circumstances—alcohol use by parent**

The trial court in a custody proceeding did not make findings on the impact of the father's alcohol use on the welfare of the child, even though the evidence supported the court's finding about the father's alcohol use, and the finding on alcohol use did not demonstrate a substantial change of circumstances warranting a modification of custody. Although a specific finding on the welfare of the child is not necessary when it is self-evident, the findings here do not permit such a conclusion.

**5. Child Support, Custody, and Visitation— support—father's income from trades—evidence sufficient**

The testimony in a child support case supported findings about the father's employment in a variety of trades.

**6. Child Support, Custody, and Visitation— support—findings—insufficient**

The trial court's conclusion about child support was not supported by the findings where the court made no findings about the father's present earnings, no findings about a reduction in income in bad faith that would support application of the earnings capacity rule, and no findings about a substantial

**FORD v. WRIGHT**

[170 N.C. App. 89 (2005)]

change in defendant's income compared to findings in the previous order.

Appeal by defendant from an order entered 16 December 2003 by Judge Marvin P. Pope, Jr. in Buncombe County District Court. Heard in the Court of Appeals 27 January 2005.

*Ingrid Friesen, P.A., by Ingrid Friesen, for plaintiff-appellee.*

*Mary Elizabeth Arrowood for defendant-appellant.*

HUNTER, Judge.

Timothy Owen Wright ("defendant") appeals from an order modifying child custody and support entered 16 December 2003. As we find the trial court erred in its findings of fact and conclusions of law as to modification of custody and conclusions of law as to the award of support, we reverse the order for the reasons stated herein.

Wendy Ann Ford ("plaintiff") and defendant are the parents of a minor child ("J.J.W."), born 13 May 2000. Plaintiff and defendant were unmarried, but lived together prior to and for a short time following J.J.W.'s birth. Following their separation, plaintiff filed for custody of J.J.W. and child support on 6 November 2000, and defendant counter-claimed for custody and child support. The trial court, in an order dated 29 March 2001, made findings of fact which included incidents of domestic violence that had occurred between the parties, potential substance abuse problems on the part of defendant, and difficulties between the parties in communication due to the domestic violence. The trial court also found that both parties were "caring and concerned parents" and that it was in the best interest of the child that custody be shared jointly between the parties. The order also specified a physical custodial arrangement wherein J.J.W. would reside primarily with plaintiff, with defendant having custodial time weekly on Monday, Wednesday, and Friday from 6:30 a.m. until 4:30 p.m., and every other weekend from 6:00 p.m. on Saturday until 3:00 p.m. on Sunday. Finally, the trial court ordered defendant to pay child support to plaintiff in the amount of $357.00 per month.

The parties briefly attempted an unsuccessful reconciliation after the entry of the March 2001 custody order. Following their failed reconciliation, the parties' relations continued to be strained, resulting in verbal disputes when exchanging the child. Despite these disagreements, the parties mutually modified the custody order so that

defendant consistently received more weekend time with J.J.W. than mandated by the custody order for several months. After continued deterioration of the parties' ability to communicate, and changes to the voluntary modifications of the custody order, defendant filed a motion, on 30 May 2002, seeking modification of child custody and support. On 11 December 2002, plaintiff filed a motion for protection from domestic violence and to modify custody.

Despite their friction, the parties again mutually modified the terms of the order and increased J.J.W.'s placement time in day care, as well as modified respective custody schedules and child support obligations. These changes were memorialized in a memorandum of judgment on 29 January 2003 and a consent order was entered on 7 April 2003. Defendant withdrew his consent to the order on 2 September 2003, and the memorandum was set aside by the trial court after a determination that defendant did not fully understand the terms and conditions of the memorandum, which gave plaintiff sole custody of J.J.W. The parties agreed, however, that the terms of the consent order would remain in place until the pending motions for modification were heard in December 2003, and a consent judgment to that effect was entered on 14 November 2003.

On 16 December 2003, an order was entered which granted plaintiff sole legal and physical custody of J.J.W., and liberal visitation with defendant. The order established a visitation schedule, including holidays, and increased defendant's child support payments to $762.00 per month. Defendant appeals.

I.

In related assignments of error, defendant first contends the trial court erred in (1) finding facts of a substantial change of circumstances unsupported by the evidence, and (2) concluding that a substantial change of circumstances affecting the welfare of the minor child had occurred which justified modification of the prior order. We agree.

[1] N.C. Gen. Stat. § 50-13.7(a) (2003) states in pertinent part: "An order of a court of this State for support of a minor child may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party[.]" In *Tucker v. Tucker*, 288 N.C. 81, 216 S.E.2d 1 (1975), the Supreme Court noted the rationale for this requirement.

"'A decree of custody is entitled to such stability as would end the vicious litigation so often accompanying such contests,

unless it be found that some change of circumstances has occurred affecting the welfare of the child so as to require modification of the order. To hold otherwise would invite constant litigation by a dissatisfied party so as to keep the involved child constantly torn between parents and in a resulting state of turmoil and insecurity. This in itself would destroy the paramount aim of the court, that is, that the welfare of the child be promoted and subserved.'["]

" 'We hold that there must be a finding of fact of changed conditions before an order may be entered modifying a decree of custody. . . .' "

*Tucker v. Tucker*, 288 N.C. at 87, 216 S.E.2d at 5 (citations omitted). Our courts have held that "the modification of a custody decree must be supported by findings of fact based on competent evidence that there has been a substantial change of circumstances affecting the welfare of the child, and the party moving for such modification assumes the burden of showing such change of circumstances." *Blackley v. Blackley*, 285 N.C. 358, 362, 204 S.E.2d 678, 681 (1974). In reviewing a motion for modification of child custody, an appellate court "must examine the trial court's findings of fact to determine whether they are supported by substantial evidence. 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Shipman v. Shipman* 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003) (citations omitted). "Our trial courts are vested with broad discretion in child custody matters. . . . Accordingly, should we conclude that there is substantial evidence in the record to support the trial court's findings of fact, such findings are conclusive on appeal, even if record evidence ' "might sustain findings to the contrary." ' " *Id.* at 474-75, 586 S.E.2d at 253-54 (citations omitted).

## A. *Failure to Communicate*

[2] Here the trial court found the parties' failure to communicate constituted a substantial change of circumstances necessitating alteration of the joint custody arrangement. The trial court made findings that the parties had attempted an unsuccessful reconciliation after the entry of the 2001 order, and that subsequent to their efforts to reunite, communication between the parties had been unsuccessful. The trial court also found that issues relating to domestic violence had not been effectively resolved and had resulted in emotional trauma to the minor child. The trial court further found that the par-

ents' failure to communicate regarding issues with the minor child had jeopardized the success of the joint custodial arrangement of the previous order.

A review of the record on appeal shows a lack of substantial evidence to support these findings. The trial court did not make specific findings of instances where the parties' failure to communicate subsequent to the prior custody order had affected the welfare of the child. A review of the record showed ample evidence that although plaintiff and defendant had disagreements and verbal disputes, they had developed ways to communicate regarding the welfare of their son. Both parties testified that they communicated about the child's health, and that upon request by plaintiff, defendant had delivered medicine to the child's pre-school and had cared for the child at unscheduled times. Plaintiff testified that she and defendant had discussed the child's best interest with regard to childcare, both as to choice of daycare and as to the number of days per week which the child would attend. Plaintiff also testified that the parties had discussed holiday arrangements, had split every holiday, and for Mother's and Father's Day had consented to allow the appropriate party keep the child overnight.

Following entry of the consent order in April 2003, defendant and plaintiff both testified that, as a result of past disputes, they primarily limited their contact to telephone conversations and to exchanges of notes passed through the child's bookbag. Defendant testified that on occasions when he and plaintiff had met to exchange the child at the police station, their communication was direct and with no problems. Plaintiff testified that she believed that the process of notes and telephone contact, although not the best way for parents to communicate generally, was the best way for the parties in this case. Thus, we fail to find substantial evidence of unsuccessful communication by the parties as to the welfare of the child.

[3] Substantial evidence also fails to support the trial court's finding that the unresolved issues and disagreements resulted in emotional trauma or harm to the child.

Plaintiff testified that a disagreement occurred regarding weekend visitation during an exchange of the child, and that defendant began yelling expletives at her. Plaintiff stated that she did not recall on that occasion how J.J.W. reacted. Upon further questioning about an earlier disagreement in the Bi-Lo parking lot while exchanging the child, plaintiff stated she "believe[d J.J.W.] got very upset. He

repeated that to me that evening, the words that he heard [defendant] use." When asked what she meant by upset, plaintiff testified that J.J.W. had cried. Such a statement alone fails to provide evidence a reasonable mind might accept as adequate to support the conclusion that the child had experienced emotional trauma. *Shipman*, 357 N.C. at 474, 586 S.E.2d at 253.

Other than plaintiff's testimony regarding the child's normal reaction to a parental disagreement, no testimony was offered which supported a finding of emotional harm. Indeed, the trial court made a specific finding of fact as to the current condition of the minor child:

> The minor child . . . is a very smart child with a good vocabulary, very inquisitive and very happy. That the Plaintiff-Mother and Defendant-Father are both involved in the care, education and welfare of the minor child. . . . The minor child loves both his parents.

Ample testimony by daycare workers, grandparents, individuals who knew the parties, and both parents supported this latter finding. Therefore, we fail to find substantial evidence of emotional harm to the child.

[2] We further note, that even assuming *arguendo* that the evidence was sufficient to support the finding as to the parties' difficulties in communication, such findings fail to support the conclusion that a substantial change had occurred since entry of the previous order. In the 29 March 2001 custody order, the trial court found:

> 5. There have been several incidents of domestic violence by the Defendant against the Plaintiff[.]
>
> . . .
>
> 9. Defendant testified that the Plaintiff had a violent temper, and that he was concerned that Plaintiff might unintentionally harm the child. . . .
>
> . . .
>
> 10. As a result of the history of domestic violence, the parties have difficulties communicating with each other.

The trial court's findings in the 16 December 2003 order reveal no substantial change from the prior order. There, the trial court found that:

b. The parties have attempted communication with each other however this has been unsuccessful.

c. The parties have modified and changed the visitation set forth by the Court in the previous Order to accommodate their individual needs which has lead [sic] to further communication difficulties between the parents.

d. The issues pertaining to domestic violence have not been effectively resolved between the parties resulting in emotional trauma to the minor child.

The trial court's findings reflect no substantial changes in the parties' communication difficulties from the prior order. As the trial court had already considered the parties' past domestic troubles and communication difficulties in the prior order, without findings of additional changes in circumstances or conditions, modification of the prior custody order was in error. *See Tucker*, 288 N.C. at 87, 216 S.E.2d at 5.

### B. Alcohol Usage

[4] The trial court also made a finding regarding defendant's alcohol use.

8. ALCOHOL USAGE: That the Defendant-Father has continued to use alcohol and has had the odor of alcohol on his person on at least four occasions when observed by independent day care workers. That although the day care workers did not contact the Department of Social Services for Buncombe County, North Carolina, since the Defendant-Father was not transporting the minor child, they did write the incidents in the child's file on August 24, 2001, February 19, 2002, September 29, 2003 and September 29, 2003. Jennifer Garett, Day Care Center Manager, confronted the Defendant-Father about the odor of alcohol on his person and the Defendant became angry and walked away. That the Plaintiff-Mother has also smelled the odor of Listerine and alcohol on the Defendant-Father since the March 29, 2001 Order. The Defendant-Father admits to social drinking of alcohol. The Plaintiff-Mother observed the Defendant-Father drink on a daily basis during their period of reconciliation during the summer of 2001.

Competent evidence supports this finding, however, the trial court made no further findings of fact as to the impact of this fact on

**FORD v. WRIGHT**

[170 N.C. App. 89 (2005)]

the welfare of the child. Our courts have held that "[t]he welfare of the children is the determining factor in the custody proceedings[.]" *In re Poole*, 8 N.C. App. 25, 29, 173 S.E.2d 545, 548 (1970). Although our Supreme Court has held that in some circumstances a trial court's order will not be found incomplete for failure to include a specific finding as to how a change of circumstances affects the welfare of the child, when such circumstances are self-evident, the Court has also recognized that "the evidence must demonstrate a connection between the substantial change in circumstances and the welfare of the child[.]" *Shipman*, 357 N.C. at 478, 586 S.E.2d at 255.

Here, the trial court's findings regarding defendant's use of alcohol do not permit a self-evident conclusion as to the effect of such behavior on the welfare of the child, particularly in light of the trial court's additional findings that the defendant-father is very involved in the care, education, and welfare of the child and that he is a fit and proper person to have care and custody of the child. Therefore the trial court's finding as to defendant's alcohol usage fails to demonstrate a substantial change of circumstances warranting modification of custody.

As the record fails to show competent evidence that a substantial change of circumstances affecting the welfare of the child occurred, we find the trial court erred in its findings as to modification of joint custody.

II.

In his next related assignments of error, defendant contends the trial court erred in (1) finding facts concerning defendant's employment which were unsupported by the evidence, and (2) imputing income to defendant for the purposes of modifying child support. We find no error in the trial court's findings of fact, however, we agree there was error in the conclusion of law.

*A. Findings of Fact as to Defendant's Employment*

[5] As noted *supra*, the trial court's findings "are conclusive on appeal, even if record evidence ' "might sustain findings to the contrary." ' " *Shipman*, 357 N.C. at 474-75, 586 S.E.2d at 254.

The trial court here found that defendant was self-employed as a landscaper, mason, carpenter, welder, and mover, and earned between $10.00 and $35.00 per hour. Testimony by witnesses for both defendant and plaintiff provided evidence that defendant was self-

employed and engaged in a variety of trades, including those found by the trial court. Further, testimony as to defendant's hourly wages was offered which supports the trial court's findings as to the monetary amounts. Therefore the trial court did not err in its findings of fact regarding defendant's employment.

## B. *Imputation of Income*

**[6]** Defendant contends the trial court improperly imputed income to him in estimating his annual gross income as $31,200.00. Modification of child support, as well as child custody, requires a showing of a substantial change of circumstances affecting the welfare of the child. *See Blackley*, 285 N.C. at 362, 204 S.E.2d at 681. In the 29 March 2001 custody order, the trial court made the following factual findings as to defendant's income:

> Defendant is self-employed primarily in landscaping but he also does other construction jobs. He works 25 to 35 hours per week, and charges between $15 and $35 per hour. It appears from his 1999 tax return that in his business his gross earnings were $20,435, and that after deduction of expenses he showed a new profit of $3064 for the year. However Plaintiff testified that during the two years they were together he always had money for groceries, utilities, recreation, eating out, as well as other necessary items. The court finds that for purposes of calculating child support, the Defendant's gross income is $1200 per month.

Based on these findings, the trial court awarded child support in the amount of $357.00 per month.

In the 16 December 2003 order, the trial court made similar findings as to the father's employment and wages, but imputed additional earnings to defendant.

> That the Defendant is self-employed as a landscaper, mason[], carpenter, welder, mover of antique furniture and earns between $10 per hour to $35.00 per hour with his truck. The Court finds that an average reasonable average income for the Defendant-Father is $15.00 per hour for a 40 hour week based upon his age, experience, work ethic, work experience, skills, knowledge and job performance as testified to by the witnesses for the Defendant and the Plaintiff. . . .

Despite his testimony that his actual gross income was $4,916, the trial court imputed to defendant an annual gross income of $31,200.

**FORD v. WRIGHT**

[170 N.C. App. 89 (2005)]

The trial court made no additional findings as to defendant's income, but awarded child support in the amount of $762.70.

Ordinarily, gross income for self-employed individuals is determined under the North Carolina Child Support Guidelines, AOC-A-162, Rev. 10/02, as "gross receipts minus ordinary and necessary expenses required for self-employment[.]" "In determining the ability of the father to support the child, the court ordinarily should examine the father's present earnings[.]" *Holt v. Holt*, 29 N.C. App. 124, 126, 223 S.E.2d 542, 544 (1976) (emphasis omitted). This Court has held that in determining whether income should be imputed for child support obligations, the primary issue is "whether a party is motivated by a desire to avoid his reasonable support obligations" by "intentionally depressing his income to an artificial low[.]" *Wolf v. Wolf*, 151 N.C. App. 523, 527, 566 S.E.2d 516, 519 (2002). To apply the earnings capacity rule, the court must have sufficient evidence of proscribed intent. *Id.*

Here, the trial court made no findings as to defendant's present earnings, nor as to defendant's reduction of income in bad faith that would support application of the earnings capacity rule. *See Holt*, 29 N.C. App. at 127, 223 S.E.2d at 544. Further, the trial court made no findings as to a substantial change in defendant's income compared to the findings in the previous order. Therefore the trial court's conclusion and order that defendant pay $762.70 per month in child support is not supported by the findings.

In conclusion, the trial court erred in its findings of fact that a substantial change of circumstances affecting the welfare of the child had occurred, and further erred in imputing income with no finding of bad faith on the part of defendant. The trial court's order is therefore reversed.

Reversed.

Judges BRYANT and JACKSON concur.