IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-909

Filed 7 November 2023

Halifax County, No. 18CVD180

HUNTER LEE SMITH (Now known as HUNTER SMITH WILLETTE), Plaintiff,

v.

REID ALAN DRESSLER, Defendant.

Appeal by defendant from judgment entered 20 January 2022 by Judge Teresa R. Freeman in Halifax County District Court. Heard in the Court of Appeals 9 August 2023.

*Tharrington Smith, LLP, by Jeffrey R. Russell, for the plaintiff-appellee.*

*Wyrick, Robbins, Yates & Ponton, LLP, Charles W. Clanton, K. Edward Greene, and Jessica B. Heffner, for the defendant-appellant.*

TYSON, Judge.

Reid Alan Dressler ("Father") appeals an order modifying child custody entered on 20 January 2022, which granted Hunter Lee Smith ("Mother") primary legal custody of Mother's and Father's minor child. We vacate the trial judge's order and remand for entry of an order concluding a substantial change in circumstances was not shown.

## I.    Background

Mother and Father are the parents of minor child, W.D., born on 14 September

2017.  *See* N.C. R. App. P. 42(b) (pseudonyms and initials used to protect the identity of minors).  Mother and Father began a romantic relationship in August 2016, while both were undergraduate students at North Carolina State University, which resulted in W.D. being conceived.  After W.D.'s birth, Mother's and Father's relationship deteriorated and ultimately ended.

Mother filed a complaint for Child Custody and Child Support on 2 March 2018.  At that time, Mother was residing in her parents' home in Halifax County.  After a hearing was held in April, the trial court awarded temporary primary custody to Mother on 24 May 2018.  Three hearings were held to modify the Order for Temporary Custody and Child Support between July 2018 and June 2019, but the order was only changed to grant Father additional visitation.  The Honorable W. Turner Stephenson, III, ("Judge Stephenson") presided over the trial and hearings.

Mother informed Father on 20 October 2019 that she had joined the United States Air Force and would be leaving for basic training in Texas in approximately one week.

On 1 November 2019, Father filed a Motion for Temporary Custody and to Present New Evidence.  Father asserted Mother "misled" Father regarding her current employment and pretended she was still employed at Braswell Family Farms.  He also included information about Mother's failure to inform Father she had enlisted in the military until approximately one week prior to departing from the state.

Mother filed a motion to stay the proceedings on 18 November 2019 pursuant to section 3932 of the Servicemember Civil Relief Act. *See* 50 U.S.C. § 3932. The trial court postponed the hearing because "it did not have jurisdictional authority to proceed as [Mother] was in basic training and thus was an active-duty member of the United States Air Force." The trial court re-scheduled a hearing for 16 March 2020, but the hearing did not occur due to COVID-19 protocols.

The trial court granted the motion to reopen the evidence and heard testimony from both parties on 15 June 2020. The trial court orally granted Father primary custody of W.D. and visitation with Mother when she exercised military leave. The order, however, was not written, signed, and entered until over six months later on 22 January 2021 ("First Custody Order").

Mother was stationed at McGuire Air Force Base in New Jersey when the evidentiary hearing was held on 15 June 2020. Shortly after the hearing, Mother married Dylan Willette ("Stepfather") on 18 September 2020, who also served in the Air Force. Sometime in late July or August 2020, Mother and Stepfather conceived a child, who was due in May of 2021. Mother and Stepfather returned to North Carolina and held a wedding ceremony with Mother's family and W.D. on 10 October 2020.

When Mother returned to duty in New Jersey at the end of October, Mother's superior informed her she was eligible for discharge due to her pregnancy. On 30 October 2020, Mother's honorable discharge from the military was approved.

- 3 -

Mother's official date of separation was listed as 20 December 2020, as Mother had accumulated twenty-five days of leave. Mother used her twenty-five days towards her "terminal leave" and permanently moved back to North Carolina on 25 November 2020.

When the evidentiary hearing was held on 15 June 2020, Father lived in Hampstead, in Pender County, but he presented evidence indicating he had purchased land in Burgaw and planned to build a house. In fall 2020, Father and W.D. often stayed in Clayton with Father's parents while his house was being built. When Father and W.D. were not staying with Father's parents, they lived in a two-bedroom guest house owned by Father's paternal aunt and uncle. Father's home in Burgaw was completed in July 2021. From July 2021 until January 2022, Father and W.D. lived Burgaw, where W.D. attended pre-kindergarten classes.

Mother's and Father's counsels communicated with each other and the trial court, and they entered several motions between the evidentiary hearing held on 15 June 2020 and the entry of the order issued on 22 January 2021. After the hearing, "counsel for [each of] the parties had agreed that each would write the trial judge in support of their contentions" and to propose orders based upon Judge Stephenson's oral rendition of the order at trial.

Father's trial counsel sent the proposed custody order on 25 September 2020 to: Judge Stephenson, Mother's counsel, and the trial court administrator. The proposed order was in a "redline format showing the differences remaining between

counsel as to the language of the order."

Father's proposed custody order contained the following language:

> 2. [Father] is granted primary physical custody of the aforesaid minor child.
>
> 3. [Mother] shall have visitation with the aforesaid minor child away from the residence of [Father] as follows:
>
> > a.      She may have a two-week visit with the child from Saturday, July 18, 2020[,] until August 1, 2020. The child will be flown to the nearest safe airport near the residence of [Mother] by [Father] and the child will be returned by [Father] to Raleigh-Durham Airport to the custody of [Father] at the conclusion of said visitation. Said visitation will begin at the time a morning flight can be arranged to Philadelphia or whatever major airport is closest *to Joint Base McGuire* and is deemed the safest for transportation of a child. The flight shall leave from Raleigh-Durham Airport. The parties will equally split the cost of the child's airline tickets and will each be responsible for the cost of their own tickets.
> >
> > b.      In addition to the two[-]week visitation period granted to [Mother] above for the remainder of this year and in years to come [Mother] is granted visitation with her child *whenever she is on "Military Leave" or at other times when has* [sic] *the ability to return to North Carolina while still serving in the United States Military*. When the [Mother] is on leave, she should give [Father] as much notice as reasonably possible but in no event less than forty-eight hours' notice of her intent to exercise visitation with her child in the State of North Carolina. [Father] is to be given priority for all holiday periods of Thanksgiving, Easter, Fourth of July, and Labor Day if [Mother] can arrange leave for those periods. As to the Christmas holiday, [Father] shall have the child with him every Christmas Eve from 6:00

o'clock P.M. until 12:00 noon on Christmas Day. Other than this part of the Christmas holiday, [Mother] may have the child with her during this holiday period *whenever she can arrange leave.*

. . .

g.     As long as [Mother] gives the required 48 hours' notice of her intent *to exercise military leave visitation* with her son this visitation will be preemptive, and she shall be entitled to said vacation unless the child is ill except for Christmas Eve and Christmas Day as set forth above.

When [Mother] *exercises the military leave visitation* or at any other times when she can return to North Carolina for visitation with the minor child *while still serving in the United States Military Service*, she shall inform [Father] where she will be staying with the minor child and provide an emergency address for contact.

In *exercising military leave* or at any other times when she can return to North Carolina for visitation with the minor child *while still serving in the United States Military Service*, [Mother] is free to choose the time she may come but she may not visit more than every other weekend unless it is in connection with Labor Day, Fourth of July, Easter, Thanksgiving or Christmas and New Year's vacation which are special times and are set forth above.

(emphasis supplied).

While Father's proposed order was pending before the court, Mother filed a purported Rule 59 Motion on 20 November 2020. Mother sought temporary custody of W.D. and to present new evidence, because the trial judge had not entered the proposed custody order sent to him on 25 September 2020. Mother's new evidence

included the following allegations: Mother had married Stepfather in September 2020 and was expecting a child in May 2021; Mother was being honorably discharged from the Air Force at the end of 2020; Mother owned a home in Wilson County and planned to move into the home on 25 November 2020; and, Mother had contacted her former employer, Pfizer, to discuss gaining re-employment in Rocky Mount.

On 7 December 2020, Father filed a motion for entry of the proposed custody order orally announced after the hearing on 15 June 2020. Father attached a revised copy of the proposed custody order, which was nearly identical to the version sent to the trial court on 25 September 2020, except Father deleted the redlined comments and renumbered certain facts and conclusions that were nonsequential in the previous draft. Father also attached a notice of hearing for 21 December 2020. Father's motion also provided the following assertions:

> 11. Again, as she has frequently done in this case, [Mother] lied to [Father] as on November 16, 2020, [Mother] verified a motion to introduce "allegedly" newly discovered evidence in this case and seeking a new custody order granting custody of the aforesaid minor child to [Mother]. She did not discuss or tell [Father] that she had sworn to said motion on November 16, 2020 or that the same had been filed on November 20, 2020 by her attorney. [Father] did not find out about the motion until the undersigned attorney returned from his Thanksgiving vacation and notified [Father] of the existence and filing of said motion on November 30, 2020.

> 12. Moreover, unlike she stated she would do, [Mother] did not and has not returned the minor child to the custody of the [Father] and for a period of three days would not even tell [Father] where his son was, how his son was doing

physically or mentally, or when she was leaving for North Carolina. Indeed, during this period between Wednesday, November 25, 2020, and Friday, November 27, 2020, [Mother] would not respond to any attempted communication from [Father]. Then from Saturday, November 28, 2020, until Monday, November 30, 2020, [Mother] would not respond to any communication attempted by [Father].

13. On November 30, 2020, [Mother] advised the [Father] in writing that she had been "legally advised to ignore you {sic [Father]} as long as possible."

14. When the [Father] pointed out the exact wording of the proposed Judgment herein and pointed out the pronouncement of Judge Stephenson, [Mother] replied in text that "that was never filed or signed by a Judge and it is not an order. I am not going to argue with you over texts. I would be more than happy to go over a new schedule for both of us to spend time with [W.D.]. For now, I am going to enjoy my time with him. Please let me know when you would like to discuss this schedule."

No order was entered regarding whether Mother's motion for temporary custody and to present new evidence was granted or denied. The record also does not indicate whether the scheduled hearing on Father's motion for entry of the First Custody Order was held. The trial court, however, entered the First Custody Order granting primary custody to Father and visitation to Mother on 22 January 2021.

While the findings of facts and conclusions of law contained in the twenty-two pages of the First Custody Order are identical to the draft order sent to the trial court on 25 September 2020, the trial court significantly modified the visitation orally announced at trial on 15 June 2020 and explained: "The Court with the consent of

the parties having determined that the visitation originally announced in open court on June 15, 2020[,] is no longer in the best interest of the child, determines that [Mother] shall have visitation with the aforesaid minor child away from the residence of [Father.]"  On appeal, both Mother and Father assert the changes to the visitation rendered on 15 June 2020 were not literally consented to.

The trial court's First Custody Order entered on 22 January 2021 included the following language, which was never consented to by the parties, orally announced at trial, or included in the proposed draft order sent to the trial court on 25 September 2020 or in Father's Motion for Entry of Order:

> 3b.    [Mother] shall have additional visitation privileges with the aforesaid minor child away from the residence of [Father] as follows:
>
> > 1.    Every other weekend during the public school system year of the child as hereinafter defined from Friday beginning a[t] 7:00 P.M. until the following Sunday at 7:00 P.M.  Said visitation is to begin on Friday the 5th day of February 2021 and every other weekend thereafter;[ ]however if [Mother's] work schedule is such she has to work on said weekend, then her every other weekend visitation will begin on Friday February 12th 2020 at 7:00 P.M. until the following Sunday and every other weekend thereafter.
> >
> > 2.    During the Christmas season of each even numbered year from 2:00 P.M. on Christmas Day until 6:00 P.M. on the day before the public school system of the county wherein[ ]the minor child resides (hereinafter the school system) resumes after Christmas vacation and during the Christmas season of each odd numbered year from 6:00 P.M. on

the day that the school system adjourns for the Christmas holiday until 2:00 PM on Christmas Day.

[Father] shall have the custody of the child during the Christmas season of each odd numbered year from 2:00 P.M. on Christmas Day until 6:00 P.M. on the day before the school system resumes after Christmas vacation and during the Christmas season of each even numbered years from 6:00 P.M. on the day the school system adjourns for the Christmas holiday until 2:00 P.M. on Christmas Day.

The intention of this Order is that the parties should alternate their respective halves of the Christmas holiday.

3.    During the Thanksgiving holiday for each odd numbered year from 6:00 P.M. on the day school recess[es] for the school holiday until 6:00 P.M. on the day before school resumes at the expiration of the holiday.

[Father] shall have the minor child with him during the Thanksgiving holiday of each even numbered year.

4.    During the spring break holiday of each even numbered year from 6:00 P.M. on the day school recesses for the holiday until 6:00 P.M. on the day before school resumes at the expiration of the holiday.

[Father] will have the child with him during the spring break holiday of each odd numbered year.

5.    [Mother] shall always have Mother's Day Weekend and [Father] shall always have Father's Day Weekend regardless of the every other weekend schedule.

6.    During the summer vacation of the child from the county school system, the parties will alternate weeks with the child's summer vacation beginning on the last Friday after school adjourns for the

summer at 6:00 P.M. and continuing to the following Friday until 6:00 P.M.

During odd numbered years, [Mother] will have the first week and [Father] will have the next week[,] and they will then alternate weeks until the last Friday before school resumes from summer break at 6:00 P.M. at which time the weekend visitation will resume. Although the summer vacation[,] as does the other holiday visitation periods[,] controls weekend visitation, the parties will not change the count or progression of weekend visitation so it will remain constant and known to the child even though not exercised during summer holiday visitations. Thus, the parties shall simply refer to a calendar and know when to resume the weekend visitation at the conclusion of the summer vacation. Summer vacation will be deemed to end on the last Friday on the summer vacation period before the School System resumes.

During even numbered years, [Father] shall have the first week and [Mother] shall have the next week and they shall then alternate weeks until the last Friday before school resumes from summer break at 6:00 P.M. at which time the weekend visitation will resume.

7.     If the parties elect not to have a joint birthday party for the minor child during odd numbered years when the child's birthday is during a weekday[,] the child will celebrate his birthday with [Mother] and during even numbered years with [Father] from the time school is out until 8:00 P.M. During the years when the child's birthday does not fall on a weekend, the parent not with the child may celebrate the child's birthday the day before from the time school is out until 8:00 P.M.

If the child's birthday falls on a weekend, then the child shall be with the parent whose weekend it is and the other parent may have the child to celebrate his birthday from 12:00 P.M. to 8:00 P.M. on the child's birthday during that weekend.

. . .

9. The provisions for Christmas, Thanksgiving, Spring Break, Mother's Day, Father's Day, birthdays, and summer override the weekend visitation privileges granted herein. When there is a conflict of either party's visitation i.e., Christmas, Thanksgiving, Spring Break, Mother's Day, Father's Day, birthdays, or summer with weekend visits, then the weekend visitations will not occur, will not be made up[,] and will be subordinated to and not occur during these other special periods.

4. The party having the child with him or her will allow the child to have telephone, FaceTime, Skype, Zoom, or other communication, if available, with the other parent one time per day between 5:00 P.M. and 6:00 P.M. The parties shall exchange phone numbers to facilitate the ability of the parties to contact the child by phone, FaceTime, or Skype.

5. When either party has the aforesaid child in his or her physical custody and either party plans to be away from home with the child for a period of more than 48 hours, then he or she will provide all travel arrangement information including the times of travel and the places to which travel is being made to the other party.

6. If the child has scheduled academic, athletic, or other events[,] the parent having physical custody will make sure that the child attends these activities.

7. Each party will make certain that any prescribed medication for the minor child accompanies the child when the child goes to visit [Mother] and the same is returned with the child to [Father].

8. The parties shall meet and exchange the child on the occasion of each visitation at 1103 North Breazeale Ave, Mount Olive NC 28365. Either party may use a family

member related by blood or marriage to provide transportation for the child.

9. Each party will notify the other party of any emergency concerning the child as soon as reasonably possible.

10. If the child is ill, [Father] will let [Mother] know and if this illness impedes a regular weekend visitation[,] then said visitation may be made up the next weekend even if this results in two (2) weekends in a row for [Mother].

11. If [Mother] has an emergency arise or should some other events arise which means that she cannot exercise her visitation with the minor child, she must let [Father] know this as soon as reasonably possible.

Notably, all references to W.D.'s visitation with Mother being related to her serving in the military or while she was exercising "military leave" were removed from the trial court's entered First Custody Order.

W.D. injured his right leg while jumping on a trampoline at Father's parents' home on Christmas Day in December 2020. Father notified Mother about the injury. Mother took W.D. to an orthopedist on 26 December 2020, who diagnosed W.D. with a probable fracture in his tibia. Mother reported W.D.'s injuries to Child Protective Services ("CPS").

CPS notified Father they had commenced an investigation concerning W.D.'s leg injury in January 2021, along with five other alleged instances of cuts, scrapes, bruises, and a possible tooth injury. An independent medical examination prompted by CPS initially noted evidence of potential neglect and abuse. Upon further review,

however, the same medical examiner "altered the diagnosis to state that significant child neglect cannot be made in this case."

Mother filed a motion on 25 February 2021 to modify the First Custody Order, alleging a substantial change in circumstances had occurred. W.D. was three years old when Mother filed the motion. Hearings were held on 29 and 30 June 2021, 5 August 2021, 14 September 2021, and 19 October 2021. At those hearings, Mother produced evidence tending to show several circumstances had changed since the 15 June 2020 hearing.

The alleged changed circumstances largely mirrored the assertions Mother had included in the purported Rule 59 Motion filed on 20 November 2020, i.e., Mother had married another man, was expecting another child, was medically discharged from the military, and was moving from New Jersey back to North Carolina. The 24 February 2021 motion also included allegations W.D. had sustained injuries while in Father's care and allegations Father had deliberately concealed certain cold symptoms before testing positive for COVID-19.

On 20 January 2022, the court found a substantial change in circumstances had occurred. The court modified the existing child First Custody Order, granted primary custody to Mother, and awarded visitation to Father. Father appeals from the trial court's order ("Second Custody Order") filed on 20 January 2022.

## II. Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(2) (2021).

### III.    Modification of an Existing Custody Order

Father asserts the trial court erred by finding a substantial change in circumstances had occurred to support a modification of custody and erred in awarding primary custody to Mother.  Father argues the trial court improperly considered evidence of events, which had occurred prior to and were accounted for in the First Custody Order entered on 22 January 2021.  Father further argues the trial court's findings were insufficient to support its conclusions of law.

### A.  Standard of Review

"When reviewing a trial court's decision to grant or deny a motion for the modification of an existing child custody order, the appellate courts must examine the trial court's findings of fact to determine whether they are supported by substantial evidence." *Shipman v. Shipman*, 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003) (citation omitted).

A trial court may not modify a permanent child custody order unless it finds a substantial change in circumstances has occurred and exists, which affects the welfare of the child. *Simmons v. Arriola*, 160 N.C. App. 671, 674, 586 S.E.2d 809, 811 (2003).  Whether a substantial change in circumstances exists for the purpose of modifying a permanent child custody order is a legal conclusion. *Spoon v. Spoon*, 233 N.C. App. 38, 43, 755 S.E.2d 66, 70 (2014).  "Conclusions of law are reviewed de novo and are subject to full review." *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (citations omitted).

Wide discretion is vested in the trial judge when awarding primary custody of a minor child. *Shamel v. Shamel*, 16 N.C. App. 65, 66, 190 S.E.2d 856, 857 (1972). "It is well established that where matters are left to the discretion of the trial court, appellate review is limited to a determination of whether there was a clear abuse of discretion." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason[,]" or has misapprehended and committed an error of law. *Id.*

## B. Analysis

### *1. Previously Disclosed Circumstances*

A *substantial change of circumstances* is required to be shown by the movant before the trial court may modify a permanent custody order. This burden of proof is required to prevent dissatisfied parties from relitigating a permanent custody order in another court in hopes of reaching a different conclusion. *Newsome v. Newsome*, 42 N.C. App. 416, 425, 256 S.E.2d 849, 854 (1979) ("The rule prevents the dissatisfied party from presenting those circumstances to another court in the hopes that different conclusions will be drawn."). "A trial court may order the modification of an existing child custody order if [the movant proves and] the court determines that there has been a substantial change of circumstances affecting the child's welfare and that modification is in the child's best interests." *Spoon*, 233 N.C. App. at 41, 755 S.E.2d at 69 (citation omitted); N.C. Gen. Stat. § 50-13.7 (2021). "[W]hen evaluating

whether there has been a substantial change in circumstances, courts *may only consider events which occurred after the entry of the previous order, unless the events were previously undisclosed to the court.*" *Woodring v. Woodring*, 227 N.C. App. 638, 645, 745 S.E.2d 13, 20 (2013) (emphasis supplied) (citation and internal quotation marks omitted).

Our threshold inquiry is whether the events that occurred between 15 June 2020, the day the evidentiary hearing was held and rendition of the order, and 22 January 2021, the day the First Custody Order was entered, were previously disclosed to and considered by the trial court. *Id.* at 645-46, 745 S.E.2d at 20. Father argues a significant portion of the assertions and evidence Mother included only one month later in her 24 February 2021 motion to modify the First Custody Order was previously disclosed, considered and addressed by the trial court, and the same evidence cannot be used to support a finding that a substantial change had occurred.

The First Custody Order entered in January 2021 contains findings that were disclosed to the trial court before entry of the First Custody Order. Mother's Rule 59 motion to present new evidence, filed 20 November 2020, asserted Mother: had been recently married, was expecting a child, was honorably discharged from the Air Force, planned to return to North Carolina, owned a home in Wilson, and hoped to gain re-employment with Pfizer.

Mother also expressed her dissatisfaction with Father's compliance with Mother's preferred visitation schedule between W.D. and her parents, W.D.'s

maternal grandparents.

In the Second Custody Order entered in January 2022, the trial court relied upon assertions contained in Mother's 20 November 2020 Rule 59 motion to support its finding that a substantial change had occurred. The trial court found Mother had: married, given birth to a child, been honorably discharged from the Air Force, returned to North Carolina, acquired a home in Wilson, gained proximity to and more support from her family, and been re-employed by Pfizer.

The trial court also cited Mother's dissatisfaction with Father's decision to refrain from scheduling visitation with certain members of Mother's family. Before Mother returned to North Carolina, she asserted Father would bring W.D. to his maternal grandfather's house, but not to his maternal grandmother's house or his maternal aunt's house. Notably, Mother's desire for W.D. to spend time separately with both of her parents and her maternal aunt was not contained in the First Custody Order, but instead was a self-asserted expectation.

This court has held that when evaluating whether a substantial change in circumstances has occurred, a trial court "may only consider events which occurred *after the entry of the previous order, unless the events were previously undisclosed to the court.*" *Id.* at 645, 745 S.E. 2d at 20 (emphasis supplied) (citation omitted).

Here, the trial court erred when it considered and re-evaluated events which were disclosed to and considered by the trial court prior to the entry of the First Custody Order. *Id.*; *Lang v. Lang*, 197 N.C. App. 746, 750, 678 S.E.2d 395, 398 (2009)

(explaining a trial court properly considered only those events which occurred *after the entry* of the prior custody order when concluding whether a change of circumstances had occurred); *Ford v. Wright*, 170 N.C. App. 89, 96, 611 S.E.2d 456, 461 (2005) ("As the trial court had already considered the parties' past domestic troubles and communication difficulties in the prior order, without findings of additional changes in circumstances or conditions, modification of the prior custody order was in error.").

Any evidence contained in Mother's Rule 59 motion was previously disclosed to and addressed by the trial court, as is demonstrated by the record before us *and* in the First Custody Order itself. That order provides the trial judge considered evidence and the numerous changes in Mother's status, which had occurred after the 15 June 2020 hearing.

Further, the First Custody Order reveals the trial court clearly considered Mother's discharge from the military and relocation to North Carolina, because the trial court: completely removed all references to Mother visiting with the child while serving in the military or while on "military leave"; included an exact address for Mother and Father to exchange W.D.; and provided an extensive, alternating summer break and holiday schedule.

When comparing the proposed custody order submitted to the trial court on 25 September 2020, which reflected the oral decretal on 15 June 2020, to the First Custody Order entered on 22 January 2021, the changes are striking and evident the

trial judge considered and addressed Mother's marriage, pregnancy, discharge from the military, and relocation to North Carolina.

The trial court had already considered Mother's changes in her circumstances through the end of 2020 and could not use these factors again as a basis to support a finding and conclusion a substantial change in circumstances had occurred in its entry of the Second Custody Order. *Id.*

### 2. *Substantial Change in Circumstances*

Father further argues the remaining evidence before the trial court did not support a substantial change in circumstances to justify modification of the First Custody Order. The only assertions the trial court had not previously considered to trigger a change in the First Custody Order were the injuries W.D. had sustained and the way Father had handled his COVID-19 infection in April 2021.

The trial court noted injuries W.D. had purportedly received over the two years while in Father's custody to constitute a substantial change:

- W.D. fell, scraped his side, and had minor bruising on his leg.

- W.D. fractured his tibia while jumping on the trampoline with his paternal uncle on Christmas Day.

- W.D. slipped on a rug while running in the bathroom, hit his face on the toilet or wall, and injured his tooth.

- W.D. fell outside on a concrete patio, which caused a bloody nose and scabbing and bruising on his knees, legs, and bottom.

- W.D. scratched his leg when jumping into a pool.

- W.D. bumped heads with another child in the pool, injuring his nose.

Expert evidence was entered at trial to address whether W.D. was either neglected or abused. Father testified W.D. was a "wide open four[-]year[-]old little boy who[ ] climbs, jumps[,] and falls" and any injuries were the result of "normal wear and tear." W.D.'s pediatrician testified he noticed various cuts and bruises on W.D. since June 2020, but they were "not abnormal and didn't cause [him] any concern."

W.D.'s pre-kindergarten teacher was questioned about a black eye W.D. allegedly presented with at school, but she could not recall whether W.D. had ever sustained a black eye. W.D.'s daycare teacher similarly testified she never observed anything concerning regarding W.D.'s health, and volunteered she is a "mandatory reporter." CPS also found no evidence of abuse after investigating Father at Mother's behest.

The trial court also found Father had a runny nose and mild headache before W.D.'s weekend visitation with Mother ended on 4 April 2021 and had failed to inform Mother. Father subsequently tested positive for COVID-19. Father did not disclose he had tested positive until the day before Mother's next weekend visit, which began on 16 April 2021. Father testified he did not inform Mother about his positive test earlier, because he was "out of quarantine" by the time he met with Mother to exchange W.D. He was not in W.D.'s presence until he had passed his isolation period.

A "determination of whether changed circumstances exist is a conclusion of law." *Head v. Mosier*, 197 N.C. App. 328, 334, 677 S.E.2d 191, 196 (2009) (citing *Brooker v. Brooker*, 133 N.C. App. 285, 289, 515 S.E.2d 234, 237 (1999)). "[C]ourts must consider and weigh all evidence of changed circumstances which affect or will affect the best interests of the child, both changed circumstances which will have salutary effects upon the child and those which will have adverse effects upon the child." *Metz v. Metz*, 138 N.C. App. 538, 540, 530 S.E.2d 79, 81 (2000).

Even where a substantial change of circumstances is shown, the court must still consider whether the change affected the welfare of the child and if a change in custody is in the child's best interest. *Shipman*, 357 N.C. at 474, 586 S.E.2d at 253.

Mother relies on *Shipman* and argues the trial court's findings should be upheld, even if they do not "present a level of desired specificity," because the effects of the changes on the welfare of W.D. are self-evident and supported by some evidence. *Id.* at 479, 586 S.E.2d at 256.

She also asserts the combination of W.D.'s purported injuries, Father's handling of his COVID-19 infection, and her change in familial status and relocation to North Carolina collectively affected W.D.'s welfare, which is "self-evident." *Id.*

Father argues evidence of Mother's re-marriage and newborn child, even if these facts were undisclosed or not considered before entry of the First Custody Order, does not constitute a substantial change. Father cites *Hassell v. Means*, 42 N.C. App. 524, 531, 257 S.E.2d 123, 127 (1979) ("Remarriage in and of itself is not a

sufficient change of circumstance to justify modification of a child custody order."
(citation omitted)) and *Kelly v. Kelly*, 77 N.C. App. 632, 636, 335 S.E.2d 780, 783
(1985) (explaining the birth of new child does not constitute a substantial change).

The evidence previously disclosed and addressed in the prior order, and which
the trial court relied upon, does not support a conclusion that a substantial change
occurred. *See Shipman*, 357 N.C. at 478, 586 S.E.2d at 255. ("As our appellate case
law has previously indicated, before a child custody order may be modified, the
evidence must demonstrate a connection between the substantial change in
circumstances and the welfare of the child, and flowing from that prerequisite is the
requirement that the trial court make findings of fact regarding that connection."
(citing *Carlton v. Carlton*, 145 N.C. App. 252, 262, 549 S.E.2d 916, 923 (Tyson, J.,
dissenting), *rev'd per curiam per dissent*, 354 N.C. 561, 557 S.E.2d 529 (2001), *cert.
denied*, 536 U.S. 944, 153 L.Ed.2d 811 (2002)).

The evidence failed to establish W.D. was abused or neglected while in Father's
care. Father enrolled W.D. in a private day care and pre-kindergarten programs, and
Father adequately provided and cared for W.D. as his primary caretaker for several
years. His pediatrician and both of W.D.'s teachers testified. Similarly, this Court
has never held the failure to inform another parent of a potential viral infection
constituted a substantial change, and more particularly of contacts outside of any
quarantine period.

A trial court may not modify an existing custody order unless a substantial

change in circumstances has occurred and been proven by the movant. *Spoon*, 233 N.C. App. at 41, 755 S.E.2d at 69. The trial court's conclusion that a substantial change in circumstances had occurred is unsupported and is vacated. This erroneous conclusion was the basis for the trial court to amend the First Custody Order and to enter the Second Custody Order in 2022. We need not address Father's remaining argument that the trial court abused its discretion by granting Mother primary legal custody of W.D., as this argument is moot.

## IV. Conclusion

The trial court improperly considered previously disclosed, considered, and addressed events when issuing the Second Custody Order in January 2022. *Woodring*, 227 N.C. App. at 646, 745 S.E.2d at 20; *Lang*, 197 N.C. App. at 750, 678 S.E.2d at 398; *Ford*, 170 N.C. App. at 96, 611 S.E.2d at 461. Without the previously considered evidence, the trial court's findings were inadequate to support a conclusion that a substantial change in circumstances had occurred. *Shipman*, 357 N.C. at 478, 586 S.E.2d at 255; *Spoon*, 233 N.C. App. at 41, 755 S.E.2d at 69.

We vacate the trial court's conclusion that a substantial change in circumstances had occurred and the award of primary custody of W.D. to Mother. We remand for further findings and conclusions in accordance with this opinion.

The parties are free to pursue custody mediation pursuant to N.C. Gen. Stat. § 7A-494 (2021) or the need for appointment of a parenting coordinator pursuant to N.C. Gen. Stat. § 50-90 to 100 (2021) to decrease potential conflicts, recalcitrant

conduct, and further litigation.  *It is so ordered.*

VACATED AND REMANDED.

Judge CARPENTER and Judge FLOOD concur.